

Alex C. Park (SBN 197781)
Law Offices of Alex C. Park
4675 Stevens Creek Blvd., Suite 100
Santa Clara, CA 95051
Telephone (408) 246-1515
Facsimile (408) 246-4105
alexcpark@yahoo.com

Attorney for Plaintiffs

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| BYUNG HOON CHUNG, individually; DUK BONG CHUNG, individually; MYUNG BIN CHUNG, individually; and KUO CHUL CHUNG, individually; on behalf of themselves and all others similarly situated;<br><br>Plaintiffs,<br><br>v.<br><br>MICHAEL MUKASEY, Attorney General of the United States; DEPARTMENT OF HOMELAND SECURITY; MICHAEL CHERTOFF, Secretary of DHS; and DOES 1 THROUGH 20, inclusive,<br><br>Defendants. | Case No.: C 07 5554 EMC<br><br>**FIRST AMENDED COMPLAINT FOR DECLARATORY INJUNCTION, INJUNCTIVE AND MANDAMUS RELIEF**<br><br>CLASS ACTION |

## I.   INTRODUCTION

1.          Named plaintiffs and class members (hereinafter "Plaintiffs") bring this action on behalf of themselves and all others similarly situated. Each of the plaintiffs were granted an immigrant visa by the United States Department of Immigration and Naturalization Services ("INS") that was relied upon for many years if not decades. All of said granted Immigrant Visas have since been ruled invalid by the DHS and ruled invalid by an administrative judge in San Francisco at various removal proceedings. It was alleged and proven that in part fraud was caused by former government employee Leland Sustaire ("Sustaire"). The

1

fraud was a result of Sustaire utilizing his official capacity as a San Jose INS supervising agent.

2. Plaintiffs relied upon their visas issued by INS agents in their capacity as government employees in charge of issuing visas. Documents and applications for immigrant visas were submitted by brokers for Plaintiffs.

3. The government employees in charge of immigration matters confiscated Plaintiffs' immigration visas and charged that visas were issued under fraudulent conditions. However, no fraud was alleged against Plaintiffs.

## II. JURISDICTION AND VENUE

4. This court has jurisdiction over the subject matter of Plaintiffs' claims for relief, and all other controversies arising herein pursuant to 28 U.S.C. §1331 (federal question jurisdiction); the Due Process Clause of the United States Constitution; 28 U.S.C. §1361 (Mandamus Act). The Plaintiffs bring their claims pursuant to 8 U.S.C. §§1101 et seq. (Immigration and Nationality Act ("INA")); 5 U.S.C. §§701 et seq. (Administrative Procedure Act ("APA")); and 28 U.S.C. §§2201-02 (Declaratory Judgment Act).

5. There are no administrative remedies available to Plaintiffs to redress the grievances described herein. This action challenges the defendants' procedural policies, practices, and interpretation of law. This action raises issues and defenses that are beyond the jurisdictional provisions of 8 U.S.C. §1252.

6. This court is the proper venue for hearing the claims in this action as the immigration courts have refused to make a determination regarding Plaintiffs' claims for estoppel. Claims of estoppel, unclean hands and laches raised in the immigration court are not appealable and must be brought in an original proceeding.

7. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(e) because defendants are secretaries of government departments and agencies acting in their official capacities; numerous plaintiffs reside in this district; because a substantial part of the events or omissions giving rise to the claim occurred in this jurisdiction; and because no real

property is involved in this action.

### III.   PARTIES

### The Defendants

8.      Defendant MICHAEL MUKASEY, is the Attorney General for the United States Government. The office of attorney general is the executive agency primarily responsible with enforcement of the immigration policies of the United States. He is sued in his official capacity.

9.      Defendant MICHAEL CHERTOFF, is the Secretary of the DHS and charged with overseeing and carrying out the authority of the DHS. DHS is an executive agency of the United States government. Since March 1, 2003, DHS has been the agency primarily responsible for implementing the INA. Within DHS, the U.S. Citizenship and Immigration Services ("USCIS") is responsible for adjudicating applications for adjustment of status to lawful permanent residence. CHERTOFF is sued in his official capacity.

10.     Plaintiffs are informed and believe, and on the basis of that information and belief allege, that at all times mentioned in this complaint, defendants were the agents and employees of their co-defendants, and in doing the things alleged in this complaint were acting within the course and scope of that agency and employment.

11.     Plaintiffs are ignorant of the true names and capacities of defendants sued herein as DOES 1 THROUGH 20, inclusive, and therefore sues these defendants by such fictitious names. Plaintiffs will amend this complaint to allege their true names and capacities when ascertained. Plaintiffs are informed and believe, and on the basis of that information and belief allege, that each of the fictitiously named defendant is negligently responsible in some manner for the occurrences herein alleged, and that plaintiff's injuries as herein alleged were proximately caused by the negligence of these defendants.

### The Plaintiffs

12.     Almost all of the Plaintiffs are immigrants from South Korea who, with

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

the assistance of a hired group of professionals, submitted to a government agency an application for visa. The professionals guided Plaintiffs through the process of applying for Immigrant Visas, green cards. After face interviews, fingerprinting, and taking oaths, the agents of the INS caused official INS documents to be issued, commonly known as green cards. Either Sustaire or other supervising adjudicating officers at the San Jose INS offices directly caused two hundred seventy-five green cards to be issued as valid. Plaintiffs received the green cards and spent a number of years living in the United States in reliance upon these green cards.

13.     The Plaintiffs have suffered a variety of similar harms as a result of defendants' actions. The principal harm was revoking visa documents issued to Plaintiffs that had been relied upon for a number of years. All revocations resulted in removal hearings and final orders for deportation against Plaintiffs.

14.     Plaintiff Byung Hoon Chung is a resident of the State of California. Mr. Chung is an immigrant from South Korea. Mr. Chung hired a broker to assist with his visa application which was issued more than ten years ago. Byung Hoon Chung has lived his life as a Legal Permanent Resident ("LPR") in the United States since the issuance of his green card.

15.     Plaintiff Duk Bong Chung is the spouse of Plaintiff Byung Hoon Chung. Duk Bong Chung applied for an immigration visa derivative of the immigration status of her spouse, Byung Hoon Chung. Duk Bong Chung was awarded immigration status as a derivative of Byung Hoon Chung for more than ten years. Duk Bong Chung has lived her life as a LPR in the United States since the issuance of her green card.

16.     Plaintiffs Myung Bin Chung and Kuo Chul Chung are the children of Byung Hoon Chung. Myung Bin Chung and Kuo Chul Chung applied for an immigration visa derivative of the status of Duk Bong Chung's immigration status. Myung Bin Chung and Kuo Chul Chung were awarded immigration status as derivatives of Byung Hoon Chung for more than ten years. Myung Bin Chung and Kuo Chul Chung have lived their lives as LPRs in the United States since the issuance of their visa.

17.     Plaintiffs immigration status as LPRs was ordered invalid in the United States by an Immigration Judge based on claims of alleged fraudulent issuance. The fraud was claimed to be the result of a government employee. Plaintiffs were not charged with any involvement in the bribery scheme.

## IV.   BACKGROUND

18.     Based on information and belief, LELAND DWAYNE SUSTAIRE ("Sustaire") is a former employee for the INS who began working there in 1975. Sustaire served the INS in positions of employment in Texas and Louisiana before settling in San Jose, California in 1984. After 1984 Sustaire transferred to the Dallas office as a Supervisory Immigration Examiner for a couple of years and then returned to San Jose. In his supervisory position Sustaire supervised a number of employees and was issued a District Director's approval and signature stamp used for approving immigration applications.

19.     Based on information and belief, while located in San Jose, California, Sustaire processed immigration applications submitted to him. Upon approval the applications were assigned file numbers.

20.     According to Sustaire's criminal testimony, beginning in the early 1980's he began accepting illegal bribes for processing immigration applications. He worked with brokers and split the fees charged to the clients by the brokers. When processing the bribery applications Sustaire created original file numbers for each application and performed some personal interviews. At the final processing step Sustaire either issued the visas with his personal approval stamp or used a stamp from another employee without their knowledge.

21.     Based on Sustaire's testimony, during the course of processing the applications through bribes Sustaire removed all relevant files from the immigration offices and stored them at his personal residence. Sustaire also removed from the immigration offices other files that were not subject to the bribery scheme.

22.     Based on Sustaire's criminal testimony, in an effort to cover up the bribery

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

crime he spent two days making a list of all of the files he removed from the immigration offices. It is believed that the Sustaire list contains two-hundred seventy-five applicants. At the conclusion of finishing the list Sustaire destroyed all of the immigration files he had at his residence by burning them. The only remaining evidence of the bribery files was the list that Sustaire created prior to destroying all of the files.

23. Based on information and belief, Sustaire was charged with the crime of bribery and in a plea bargain effort Sustaire provided the list of bribery files he created in an effort to reduce his criminal sentence.

24. No direct evidence was presented by the INS or DHS showing that Plaintiffs' application files were improper or that they possessed false applications. No evidence was presented to the immigration judge that Sustaire had ever personally met any of the Plaintiffs or that any Plaintiffs participated in or had knowledge about the bribery scheme.

25. No evidence has been produced by the INS or DHS showing that Plaintiffs' original residency documents were insufficient for issuance of a LPR card or that the LPR cards originally issued by the INS were invalid. Sustaire admitted that during his employment with the INS he destroyed the application records submitted by Plaintiffs supporting the application of the LPRs.

26. The green cards issued to Plaintiffs were confiscated by government employees and as a result of the confiscation, Plaintiffs were subjected to removal proceedings by the DHS. All removal proceedings resulted in orders for deportation. These proceedings violated Plaintiffs' due process rights.

27. Plaintiffs have filed timely appeals to the immigration orders for deportation. The appellant rulings issued by the BIA determined that the administrative proceedings has no authority to make appellate decisions based on equitable defenses of estoppel, unclean hands or laches.

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

## V.   CLASS ALLEGATIONS

28.     Plaintiffs bring this action on behalf of themselves and all others similarly situated, pursuant to Federal Rules of Civil Procedure 23(a) and 23(b). The three classes that named plaintiffs seek to represent are the following:

   A.   <u>Primary LPR.</u>  Foreign nationals who:

   Are the individual or primary LPR that filed the primary visa application and received an issued visa or green card accomplishing his or her LPR status. This status may have been relied upon by the derivative family applicants.

   A number of years after the issuance of the Primary LPR visa and reliance on it by Plaintiff, the United States government confiscated the visa and began removal proceedings claiming issuance of said visa was improper.

   B.   <u>Derivative Spouse LPR.</u>  Foreign nationals who:

   Are the spouse of a Primary LPR, and have become the derivative LPR individual that filed the derivative LPR application reliant upon the spouse who is in possession of the Primary LPR visa status and received an issued visa accomplishing his or her derivative LPR status. This status is continually reliant upon by the Primary LPR family applicant.

   A number of years after the issuance of the derivative LPR visa and reliance on it by Plaintiff, the United States government confiscated the

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

Primary visa and began removal proceedings against derivative spouse Plaintiff claiming issuance of said visa was improper.

C. <u>Derivative Children LPR.</u> Foreign nationals who:

Is the child of a Primary LPR, and has become the derivative LPR individual that filed the derivative LPR application reliant upon the parent who holds the Primary LPR visa status and who received an issued visa accomplishing his or her derivative LPR status. This status is continually reliant upon by the Primary LPR parent applicant.

A number of years following the issuance of the derivative LPR visa and reliance on it by Plaintiff, the United States government confiscated the Primary visa and began removal proceedings against derivative child Plaintiff claiming issuance of said visa was improper.

29. The requirements of Federal Rules of Civil Procedure 23(a) and 23(b) are met. The proposed combined classes are so numerous that joinder of all members is impracticable. The precise number of potential class members in each class is not currently identifiable by Plaintiffs. However, on information and belief, there are at least two hundred seventy-five Plaintiffs in all classes identified on Sustaire's list.

30. The questions of law and fact at issue are common to the proposed classes, including whether the visas were issued within the government's authority, whether defendants acted beyond their authority when confiscating visas and beginning with removal proceedings; whether their actions violated the INA, the APA, the Due Process Clause, agency regulations and/or claims of estoppel, unclean hands and laches as they can be applied to the common facts.

31. The named plaintiffs will fairly and adequately protect the interests of the proposed classes because they seek relief on behalf of the classes as a whole and have no interest antagonistic to other members of the classes.

32. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

33. The named Plaintiffs are represented by competent counsel with extensive experience in immigration law and federal court litigation.

34. Finally, defendants have acted on grounds generally applicable to the classes, thereby making appropriate final declaratory and injunctive relief with respect to the classes as a whole.

## VI. CAUSES OF ACTION

### FIRST CAUSE OF ACTION
#### (Estoppel)

35. Plaintiffs incorporate by this reference all preceding paragraphs containing the allegations of this complaint as though fully set forth here.

36. The DHS previously issued LPR documents to Plaintiffs for the purpose of using the LPRs to legitimize their immigration residency. The LPR status was relied upon by Plaintiffs for a number of years providing the opportunity for Plaintiffs to establish long-term meaningful and productive lives within the United States.

37. The DHS has now determined that the LPR status of Plaintiffs are invalid.

38. Plaintiffs' status as an LPR may have been based on documentation issued by Sustaire's position of authority as a Supervisory Adjudication Officer. While acting as an

9

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

agent of the INS Sustaire committed affirmative misconduct during the years he accepted illegal bribes and destroyed Plaintiffs' files.

39. Neither Sustaire nor the INS have maintained any documentation showing that the LPR documents issued to Plaintiffs were improper or invalid.

40. Plaintiffs had no knowledge of the illegal acts of Sustaire and did not participate in Sustaire's illegal bribery scheme.

41. Plaintiffs detrimentally relied on the issuance of the LPR documents and spent the subsequent years establishing a life in the United States by foregoing their personal and professional ties to South Korea.

42. DHS should now be prevented from removing Plaintiffs for improper LPR applications due to the theory of estoppel.

## SECOND CAUSE OF ACTION

### (Unclean Hands)

43. Plaintiffs incorporate by this reference all preceding paragraphs containing the allegations of this complaint as though fully set forth here.

44. Sustaire is a former employee of INS who was empowered with the authority of issuing LPR documents. During the course of processing immigration applications through a scheme of illegal bribes Sustaire represented himself as an employee of INS and the government held Sustaire out as a representative of the INS. At the same time Plaintiffs' LPR documents were issued the INS empowered Sustaire with the authority to issue valid immigration documents.

45. If the issued LPR documentation of Plaintiffs resulted from Sustaire's position as a Supervisory Adjudication Officer while acting as an agent of the INS he committed affirmative misconduct during the years he accepted illegal bribes. Sustaire also claimed that he destroyed Plaintiffs' application files. Neither Sustaire nor the DHS have maintained any documentation showing that the LPR documents issued to Plaintiffs were improper or invalid.

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

46. Plaintiffs received LPR documents issued by the INS. Plaintiffs relied upon the issued LPRs as legal documentation to legitimize their residency in the United States. The LPR status was relied upon by Plaintiffs for a number of years providing the opportunity for Plaintiffs to establish long-term meaningful and productive lives within the United States.

47. The DHS has now determined that the LPR status of Plaintiffs are invalid. It is the claim of DHS that the LPR documentation was not properly issued. Plaintiffs applications and supporting documentation was never provided to Plaintiffs by DHS.

48. Plaintiffs had no knowledge of the illegal acts of Sustaire and did not participate in Sustaire's illegal bribery scheme.

49. Plaintiffs detrimentally relied on the issuance of the LPR documents and spent the subsequent years establishing a life in the United States by foregoing their personal and professional ties to South Korea.

50. DHS should now be prevented from removing Plaintiffs for improper LPR applications due to the theory of unclean hands.

### THIRD CAUSE OF ACTION

#### (Violation of Due Process)

51. Plaintiffs incorporate by this reference all preceding paragraphs containing the allegations of this complaint as though fully set forth here.

52. The orders for removal issued against Plaintiffs were based on the List that was prepared by Sustaire and absence of Plaintiffs' files at the DHS. All such charges were in anticipation of using such information for negotiating a plea bargain offer, in a criminal matter that occurred while Sustaire was employed by the INS.

53. No direct evidence was presented by the DHS to prove that the Plaintiffs' LPR documentation was insufficient. The lack of proof used to establish a removal order is a violation of Plaintiffs' due process rights by not presenting clear and convincing evidence to prove the claim.

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

54. The order for removal of Plaintiffs cannot be based on a hearing that violates due process rights.

55. The violation of Plaintiffs' due process rights prevent enforcement of an order for removal.

56. There was no direct evidence proving that Plaintiffs' LPR documents were invalid or improper as determined by the immigration judge. This lack of evidence proving the veracity of Plaintiffs' documents is a violation of their due process rights.

## FOURTH CAUSE OF ACTION

### (Laches)

57. Plaintiffs incorporate by this reference all preceding paragraphs containing the allegations of this complaint as though fully set forth here.

58. Sustaire held a position as a Supervisory Adjudication Officer in the INS at the time Plaintiffs' immigration applications were processed and issued. While acting as an agent of the INS Sustaire issued LPR documentation. Sustaire claimed that he destroyed Plaintiffs' application files. Neither Sustaire nor the DHS have maintained any documentation showing that the LPR applications filed by Plaintiffs were improper or invalid.

59. Plaintiffs received LPR documents issued by the INS on or about ten years ago. For more than ten years Plaintiffs relied upon the issued LPRs as legal documentation to legitimize their residency in the United States. The LPR status was relied upon by Plaintiffs since the time they were issued. The INS and DHS relied upon the issuance of said LPR documentation since their issuance. The LPR documentation provided Plaintiffs with the opportunity to establish long-term meaningful and productive lives within the United States.

60. After relying upon the LPR documentation for a number of years, the DHS has now determined that the LPR status of Plaintiffs are invalid. It is the claim of DHS that the LPR documentation was not properly issued. Plaintiffs applications and supporting documentation were never provided to Plaintiffs by DHS.

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

61. Plaintiffs had no knowledge of the illegal acts of Sustaire and did not participate in Sustaire's illegal bribery scheme.

62. DHS should now be prevented from removing Plaintiffs for improper LPR applications due to the theory of laches.

## VII. RELIEF REQUESTED

WHEREFORE, Plaintiffs respectfully ask that the Court:

1. Enter a temporary restraining order and a preliminary injunction, pending a decision on the merits, that enjoins Defendants from implementing the deportation order.

2. Upon hearing the merits, enter a declaratory judgment that the removal orders are invalid and a permanent injunction to prohibit Defendants from implementing or otherwise giving effect to the deportation order.

3. Permit this case to proceed as a class action and certify the classes as and when requested by Plaintiffs;

4. Declare that defendants' acts and omissions complained of herein violate the INA, defendants' regulations, the Due Process Clause of the Fifth Amendment, and constitute illegal abuse of power;

5. Preliminarily and permanently enjoin defendants as and when requested by plaintiffs;

6. Order defendants to recognize Plaintiffs' defense of estoppel;

7. Order defendants to recognize Plaintiffs' defense of unclean hands;

8. Order defendants to recognize Plaintiffs' defense of laches;

9. Award the Plaintiffs their attorneys' fees and costs under the Equal Access to Justice Act or according to proof as the court deems necessary; and

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF

10. For such other and further relief as the court deems just, equitable and proper.

Dated: November 14, 2007

LAW OFFICES OF ALEX C. PARK

_Alex C. Park_
Alex C. Park
Attorney for Plaintiffs

COMPLAINT FOR DECLARATORY, INJUNCTIVE, AND MANDAMUS RELIEF