# EXHIBIT E

# No. 06-71728

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

### BYUNG HOON CHUNG, et al.,

**Petitioners,**

**v.**

### ALBERTO R. GONZALES,
### Attorney General of the United States,

**Respondent.**

---

## PETITION FOR REVIEW OF AN ORDER OF
## THE BOARD OF IMMIGRATION APPEALS
### (Agency Case Nos. A72 343 857 / 858 / 859 / 860)

---

## BRIEF FOR RESPONDENT

---

PETER D. KEISLER
Assistant Attorney General
Civil Division

DAVID V. BERNAL
Assistant Director
Office of Immigration Litigation

ANDREW C. MACLACHLAN
Attorney
LANCE L. JOLLEY
Law Clerk
Office of Immigration Litigation
Civil Division, U.S. Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 514-9718

Attorneys for Respondent

# **TABLE OF CONTENTS**

STATEMENT OF JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE ISSUES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

I.     Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

II.    The Fraud . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

III.   Evidence in the Removal Proceedings . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.    Oral Decision of the Immigration Judge . . . . . . . . . . . . . . . . . . . . . . 10

V.     Decision of the Board . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

SUMMARY OF ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

I.     The Board Correctly Determined that the Chung Family Is Removable . . 15

    A.     Scope and Standard of Review . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

    B.     Neither the Statutory Framework that Supported the Charge of
       Removability Nor the Orders of Removal Imply the Necessity of
       Fraud or Willful Misrepresentation to Support Removal . . . . . . . . 16

    C.     The Chung Family's Concession of Removability Itself Is a
       Sufficient Basis to Support the Removal Order Against Them . . . . 18

II.    The Government Should Not Be Estopped from Removing the Chung
     Family from the United States . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

    A.     This Court Lacks Jurisdiction to Grant the Relief Requested by the
       Chung Family under Its Precedent Decision in <u>Alcaraz v. INS</u> . . . 22

B.    Assuming Jurisdiction, the Chung Family Has Not Demonstrated that the Government Should Be Equitably Estopped in the Case  .. 23

    1.    The Doctrine of Equitable Estoppel Should Be Applied Extremely Rarely Against the Enforcement of Federal Immigration Statutes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

    2.    The Chung Family Has Failed to Demonstrate a Basis for Equitable Estoppel in Their Case . . . . . . . . . . . . . . . . . . . . . 27

        a.   There Has Been No Affirmative Misconduct Against the Chung Family by the Government . . . . . . . . . . . . . . 28

        b.   The Misconduct Did Not Cause Serious Injustice to the Chung Family . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

        c.   Estoppel in this Situation Unduly Damages the Public's Interest . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

        d.   The Is No Evidence of Agency Knowledge . . . . . . . . . . 35

        e.   There Is No Evidence of Agency Intent . . . . . . . . . . . . . 36

        f.   The Chung Family Knew of the Fraud in 1999 . . . . . . . . 36

        g.   Any Reasonable Reliance Ended in 1999 and the Chung Family Has Not Demonstrated Diligence . . . . . . . . . . . . 37

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 40

STATEMENT OF RELATED CASES
STATEMENT REGARDING ORAL ARGUMENT
CERTIFICATE OF COMPLIANCE
CERTIFICATE OF SERVICE

# **TABLE OF AUTHORITIES**

## **CASES**

Acewicz v. INS,
    984 F.2d 1056 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Alcaraz v. INS,
    384 F.3d 1150 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, passim

Alejandre v. Ashcroft,
    319 F.3d 365 (9th Cir. 2003) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Almaghazar v. Gonzales,
    457 F.3d 915 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Bazua-Cota v. Gonzales,
    466 F.3d 747 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

Choe v. INS,
    11 F.3d 925 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30, 31

In re Crystal Properties, Ltd., L.P.,
    268 F.3d 743 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Estrada v. INS,
    775 F.2d 1018 (9th Cir.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Federal Crop Ins. Corp. v .Merrill,
    332 U.S. 380, 68 S. Ct. 1 (1947) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fernandez-Vargas v. Gonzales,
    --- U.S. ----, 126 S. Ct. 2422 (2006) . . . . . . . . . . . . . . . . . . . . . . . . . 37, 38

Filor v. United States,
    76 U.S. (9 Wall.) 45 (1869) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Fisher v. INS,
    79 F.3d 955 (9th Cir. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Florez-de Solis v. INS,
    796 F.2d 330 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19, 21

The Floyd Acceptances,
    74 U.S. (7 Wall.) 666 (1868) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

In re George,
    177 F.3d 885 (9th Cir. 1999), cert. denied sub nom., George v. City of
    Morro Bay, 528 U.S. 1135, 120 S. Ct. 978 (2000) . . . . . . . . . . . . . . . . . . . 37

Ghaly v. INS,
    58 F.3d 1425 (9th Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Heckler v. Community Health Services of Crawford County, Inc.,
    467 U.S. 51, 104 S. Ct. 2218 (1984) . . . . . . . . . . . . . . . . . . . . . . 23, passim

INS v. Hibi,
    414 U.S. 5, 94 S. Ct. 19 (1973) . . . . . . . . . . . . . . . . . . . . . . . . 24, 25, 27, 35

INS v. Miranda,
    459 U.S. 14, 103 S. Ct. 281 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

INS v. Pangilinan,
    486 U.S. 875, 108 S. Ct. 2210 (1988) . . . . . . . . . . . . . . . . . . . . . . . 25, 26, 35

Karim v. Gonzales,
    424 F.3d 109 (1st Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

Lavin v. Marsh,
    644 F.2d 1378 (9th Cir. 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

Lee v. Munroe & Thornton,
    11 U.S. (7 Cranch) 366 (1813) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

Montana v. Kennedy,
    366 U.S. 308, 81 S. Ct. 1336 (1961) . . . . . . . . . . . . . . . . . . . . . . . . . . 24, 25

Morgan v. Heckler,
    779 F.2d 544 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

iv

Mukherjee v. INS,
    793 F.2d 1006 (9th Cir. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Office of Personnel Management v. Richmond,
    496 U.S. 414, 110 S. Ct. 2465 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 24

Ramirez-Alejandre v. Ashcroft,
    319 F.3d 365, 377 (9th Cir. 2003) (en banc) . . . . . . . . . . . . . . . . . . . . . . . 15

S & M Inv. Co. v. Tahoe Regional Planning Agency,
    911 F.2d 324 (9th Cir. 1990), cert. denied, 498 U.S. 1087,
    111 S. Ct. 963 (1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

Salgado-Diaz v. Gonzales,
    395 F.3d 1158 (9th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, passim

Santiago v. INS,
    526 F.2d 488 (9th Cir. 1975), cert. denied, 425 U.S. 971,
    96 S. Ct. 2167 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 30, 31

Selimi v. INS,
    312 F.3d 854 (7th Cir. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Simeonov v. Ashcroft,
    371 F.3d 532 (9th Cir. 2004), cert. denied, 543 U.S. 1052,
    125 S. Ct. 887 (2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

State Farm Mut. Auto. Ins. Co. v. Porter,
    186 F.2d 834 (9th Cir. 1951) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Sulit v. Schiltgen,
    213 F.3d 449 (9th Cir. 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20, 32

Torres-Aguilar v. INS,
    246 F.3d 1267 (9th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

United States v. Georgia-Pacific Corp.,
    421 F.2d 92 (9th Cir. 1970) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

United States v. Kirkpatrick,
    22 U.S. (Wheat.) 720 (1824) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

United States v. Wharton,
    514 F.2d 406 (9th Cir. 1975) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

Wagner v. Director, Federal Emergency Management Agency,
    847 F.2d 515 (9th Cir. 1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

Watkins v. United States Army,
    875 F.2d 699 (9th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26, passim

Williams v. INS,
    795 F.2d 738 (9th Cir. 1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

Wood v. Carpenter,
    101 U.S. 135 (1879) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

## **STATUTES**

### **Immigration and Nationality Act of 1952, as amended:**

Section 203(b)(2),
    8 U.S.C. § 1153(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Section 211,
    8 U.S.C. § 1181 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Section 212(a),
    8 U.S.C. § 1182(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Section 212(a)(7),
    8 U.S.C. § 1182(a)(7) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Section 212(a)(7)(A)(i),
    8 U.S.C. § 1182(a)(7)(A)(i) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 17

Section 212(a)(7)(A)(i)(I),
    8 U.S.C. § 1182(a)(7)(A)(i)(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Section 212(a)(9)(A),
    8 U.S.C. § 1182(a)(9)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Section 212(c),
    8 U.S.C. § 1182(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

Section 212(k),
    8 U.S.C. § 1182(k) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Section 237(a),
    8 U.S.C. § 1227(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Section 237(a)(1)(A),
    8 U.S.C. § 1227(a)(1)(A) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3, 13, 16, 17

Section 240B,
    8 U.S.C. § 1229c . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

Section 242,
    8 U.S.C. § 1252 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 21

Section 242(b)(1),
    8 U.S.C. § 1252(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Section 242(b)(2),
    8 U.S.C. § 1252(b)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Section 242(b)(4)(B),
    8 U.S.C. § 1252(b)(4)(B) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 31

Section 242(d)(1),
    8 U.S.C. § 1252(d)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Section 242(g),
    8 U.S.C. § 1252(g) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22, 23

Section 245(a),
    8 U.S.C. § 1255(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

**REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231:** . . . . . 2

## <u>REGULATIONS</u>

8 C.F.R. § 1003.1(b)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

8 C.F.R. § 1003.1(d)(3) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

8 C.F. R. § 1003.1(d)(3)(ii) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

8 C.F.R. § 1240.10(c) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

8 C.F.R. § 1240.10(d) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 21

8 C.F.R. § 1240.15 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

# No. 06-71728

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

### BYUNG HOON CHUNG, ET AL.,

**Petitioners,**

**v.**

### ALBERTO R. GONZALES,
### Attorney General of the United States,

**Respondent.**

### STATEMENT OF JURISDICTION

In this immigration case, petitioners Byung Hoon Chung ("Byung"), Duk

Bong Chung ("Duk"), Myung Bin Chung ("Myung"), and Kou Chul Chung

("Kou") (collectively referred to as "the Chung family"), are natives and citizens of

the Republic of Korea ("Korea").  They seek this Court's review of a decision

issued by the Board of Immigration Appeals (the "Board" or "BIA") on March 9,

2006.  See Administrative Record ("A.R.") 2-3.[1]  In this decision, the Board

dismissed the Chung family's appeal, finding that an immigration judge had

---

[1]    The abbreviation "A.R." followed by a number refers to a page of the
Certified Administrative Record on file with the Court.  The abbreviation "Pet.
Bf." followed by a number refers to a page of Petitioners' opening brief on file
with the Court.

correctly determined that they are removable as aliens not in possession of valid immigrant documents. Id. The Board's jurisdiction over the Chung family's appeal arose under 8 C.F.R. §§ 1003.1(b)(3) and 1240.15, granting it jurisdiction over decisions of immigration judges in removal cases.

This Court's jurisdiction to review final orders of removal is governed by Section 242 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252, as amended by the REAL ID Act of 2005, Pub. L. No. 109-13, Div. B, 119 Stat. 231 ("REAL ID Act")). The Chung family timely filed a petition for review of the Board's decision on April 4, 2006. See INA § 242(b)(1), 8 U.S.C. § 1252(b)(1) ("The petition for review must be filed not later than 30 days after the date of the final order of removal."). Because the immigration judge completed the Chung family's removal proceedings in San Francisco, California, venue in this Court is proper under INA § 242(b)(2), 8 U.S.C. § 1252(b)(2). A.R. 53.

As discussed in detail in the argument below, this Court's jurisdiction is limited in this case by the Court's precedent decision in Alcaraz v. INS, 384 F.3d 1150, 1160-61 (9th Cir. 2003), to the extent that the Chung family assert a cause or claim arising from the decision or action by executive agencies to commence proceedings, adjudicate cases, or execute removal orders.

## STATEMENT OF THE ISSUES

1.    Whether the Chung family's entry into the United States without valid immigration documents is lawful grounds for ordering them removed from the United States under INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A)?

2.    Whether this Court has jurisdiction to estop the execution of the final orders of removal against the Chung family to the extent that the Chung family assert a cause or claim arising from the decision or action by executive agencies to commence proceedings, adjudicate cases, or execute removal orders?

3.    Assuming jurisdiction, whether the United States government now should be estopped from removing the Chung family due to the lack of evidence that they knowingly participated in fraud committed on their behalf, where the fraud was a crime against the government committed by a government employee acting outside of his official capacity, and the Chung family was never and is not presently eligible for status in the United States, and they learned of the fraud in 1999 but then re-entered the United States in 2000-2001 without valid immigration documents, and they have taken no steps to obtain lawful status or to mitigate the disruption to their lives that they assert as the sole basis for estoppel.

3

## STATEMENT OF THE CASE

The members of the Chung family are natives and citizens of Korea.  A.R.

600, 609, 618, 627.  Each member of the family most recently entered the United

States in 2000-2001.  A.R. 600, 609, 618, 627.  On June 3, 2003, the members of

the Chung family were served Notices to Appear ("NTAs") charging them with

being subject to removal because, at the time of their latest entry into the United

States, they were inadmissible because they did not possess valid immigration

documents.  A.R. 600, 609, 618, 627.[2]

On April 20, 2005, at an evidentiary hearing, the Chung family admitted the

allegations related to the charge of entry while inadmissible due to their lack of

valid immigration documents, and conceded removability on that charge.  A.R. 79-

81.  After considering the evidence, the immigration judge found that each member

of the Chung family is removable as charged because they were inadmissible at the

time of their most recent entry due to their lack of valid immigration documents.

A.R. 41-42.  After the Chung family declined to request voluntary departure, the

immigration judge ordered them removed to Korea.  A.R. 42, 80-81.

The Chung family filed a timely appeal of the immigration judge's decision

to the Board.  A.R. 10.  On March 9, 2006, the Board adopted and affirmed the

---

[2]  Byung and Duk were also charged to have procured immigration
documents by fraud or willful misrepresentation.  A.R. 600, 609.  That charge was
later withdrawn.  A.R. 78-79.

4

decision of the immigration judge, adding its own reasoning in response to the issues raised on appeal. A.R. 2-3. The present, timely petition for review followed.

## STATEMENT OF FACTS

### I.   Background

The Chung family originally entered the United States in 1992 as non-immigrant visitors. A.R. 57. Byung met Song Ja Byun ("Ms. Byun")[3] and told Ms. Byun that he was looking for a job in the United States. A.R. 59, 64, 74. After reviewing Byung's resumé, she told him he was qualified for a job at the company of her brother-in-law, John Choe ("Mr. Choe"), semi-conductor manufacturer. A.R. 60. Byung met Mr. Choe at his company once.[4] A.R. 61. Byung paid Ms. Byun $8,000 to prepare and process the necessary employment-based immigration application for his family. A.R. 62. About eight months later, the Chung family received documents reflecting status as lawful permanent residents of the United States, also known as "green cards." A.R. 72. Each member entered the United States based on that status as lawful permanent residents: Byung entered the United States on or about March 27, 2001 (A.R. 600); Duk entered the United States on or

---

[3]   The names of Ms. Byun, Mr. Choe, and Mr. Sustaire are spelled inconsistently throughout the record. A.R. 498, 504, 517.

[4]   Byung did not recall the name of the company in his testimony. A.R. 61.

5

about December 14, 2000 (A.R. 609); Myung entered the United States on or about August 15, 2000 (A.R. 618); Kou entered the United States on or about March 27, 2001 (A.R. 627).

## II.    The Fraud

At the time of his application for lawful permanent resident status, Byung was not employed and did not have a written offer for a job. A.R. 112-13. Byung has a Bachelor's degree in metallic engineering and has a "master teacher degree." A.R. 113. Ms. Byun helped Byung fill out his application for lawful permanent resident status, from which the other members of the family would be beneficiaries. A.R. 112.

Ms. Byun provided the complete application to Mr. Choe. Mr. Choe had established a relationship with an immigration examiner in the San Jose office of the Immigration and Naturalization Service, Leland Dwayne Sustaire ("Mr. Sustaire"), through which Mr. Sustaire would accept bribes to manipulate the processing of adjustment of status applications for ineligible aliens in a way that would result in approval. A.R. 154-55. Mr. Sustaire also had a similar relationship with a local attorney named Daniel Lee ("Mr. Lee"). A.R. 160. Mr. Sustaire never interviewed the alien applicants involved as required by law, and in fact had no contact with the applicants at all. A.R. 145, 156, 160. He had no knowledge of whether the applicants were aware of their ineligibility, or the bribes, or of the

6

fraud involved in the production of documents on their behalf. A.R. 156-57. Mr. Sustaire simply created all of the documents necessary to demonstrate completed, successful processing of the applications, and forwarded them for issuance of the approval documents. A.R. 159-60. After the final documents were issued to the applicant, Mr. Sustaire destroyed the files to ensure that the fraud would not be detected. A.R. 186, 191-92.

## III.  Evidence in the Removal Proceedings

### A.    Documents Submitted by the Government

Mr. Sustaire eventually confessed to his misconduct, and pled guilty to the felony of conspiracy to bribe a public official. A.R. 498. He received a downward departure in his sentence, based on his cooperation with authorities in the investigation of his fraudulent conduct, with the criminal prosecution of his conspirators, and with further immigration proceedings regarding the ineligible applicants. A.R. 530-36. Mr. Choe, Ms. Byun, Mr. Lee, and others pled guilty to conspiracy to bribe a public official. A.R. 504, 517, 533.

The government submitted to the immigration judge a list of alien numbers and other information contemporaneously maintained by Mr. Sustaire representing aliens issued invalid and fraudulent immigration documents by Mr. Sustaire. A.R. 491-96. This list contains registration numbers of "aliens that received permanent resident cards as a result of bribes paid on their behalf to Mr. Sustaire." A.R. 488.

Byung's application was one for which Mr. Sustaire received from Mr. Choe, was

paid a bribe, and successfully processed the application on behalf of an ineligible

alien.  A.R. 496.

Due to the number of cases involved,[5] the core of the government evidence

consisted of the oral decision and part of a transcript from In re Yun Kyung Kim

(Executive Office for Immigration Review, United States Immigration Court, San

Francisco, California, December 17, 2001).  A.R. 268-356.  The transcript includes

sworn testimony of Special Agent Ralph B. Curtis, Office of the Inspector General,

U.S. Department of Justice, regarding the investigation concerning "the issuance of

fraudulent permanent residence cards" by Mr. Sustaire.  A.R. 264.

The government also submitted a transcript from United States v. Daniel Lee

(United States District Court, Northern District of California, November 15-19,

1999).  A.R. 358-486.  The transcript includes "sworn testimony of Leland Dwayne

Sustaire regarding his illegal sale, through a number of intermediaries, of

permanent resident cards to aliens not entitled to those cards."  A.R. 265.  In

addition, the government submitted a transcript of sworn testimony of Mr. Sustaire

before immigration judge Anthony S. Murry in one of the first of the removal

proceedings arising from the investigation into Mr. Sustaire's fraud.  A.R. 120-262.

_____

[5] The government requested to use transcripts in the Chungs' proceedings, and counsel for the Chung family filed a response in which the Chungs explicitly posed no objection to the request.  A.R. 541-44.

The government also submitted the sworn declaration of Special Agent
Lesley Brown, U.S. Immigration and Customs Enforcement, summarizing the
Sustaire investigation. A.R. 87-92. Ms. Brown interviewed Byung on May 21,
2003. A.R. 109. According to Byung, Ms. Byun helped him fill out his application
for lawful permanent resident status. A.R. 112. At the time of his application, he
was not employed and did not have a written offer for a job. A.R. 112-13. Byung
has a Bachelor's degree in metallic engineering and has a "master teacher degree."
A.R. 113. Byung never worked for Mr. Choe nor his company. A.R. 114. Ms.
Brown also completed Form I-213, Record of Deportable/Inadmissible Alien, for
each member of the Chung family. A.R. 97-107. Byung provided no evidence to
show that he possessed a skill not currently available in the United States, that he
knew the name of the employer seeking his services, that he worked for the
employer that allegedly petitioned for him, nor that the proper procedures were
followed to file for lawful permanent residence through an employment-based
adjustment application. See A.R. 98. Because there was no evidence that Byung
had ever met the eligibility criteria for an employment-based adjustment, Ms.
Brown concluded that the Chung family's lawful permanent residence documents
were fraudulently obtained and invalid. See A.R. 98.

**B.    Evidentiary Hearing Before the Immigration Judge**

Before the immigration judge, through counsel, the Chung family admitted

9

the allegations related to the charge of entry while inadmissible due to their lack of valid immigration documents, and conceded removability on that charge.  A.R. 79, 81.  Byung testified with respect to how his family obtained the invalid immigration documents.  A.R. 55-78.  He testified that he never intended to obtain status by fraud or that his payment be used to pay a bribe, and that he did not suspect anything was wrong at the time he applied.  A.R. 62-63.  Byung testified that he first learned of problems with the green cards his family received in 1999, when he read an article about the fraud in a newspaper, the Korea Times.  A.R. 63.  As to the charge of possessing invalid immigration documents, the Chung family admitted the allegations and conceded removability.  A.R. 79, 81.

## IV.    Oral Decision of the Immigration Judge

On April 20, 2005, the immigration judge ordered the Chung family removed to Korea.  A.R. 42.  After review of the evidence before him (A.R. 39-41), the immigration judge sustained the charge of removability because the Chung family is "not in possession of valid documentation authorizing their stay in the United States."  A.R. 41.  Although the Chung family was not aware of the improper behavior of Ms. Byun, Mr. Choe, and Mr. Sustaire, at the time they received their lawful permanent residence documents, they did not possess "valid green cards in the sense that they were not issued after compliance with the applicable statutes and regulations governing the issuance of green cards."  A.R. 41-42.

## V.   Decision of the Board

In their appeal of the immigration judge's decision, the Chung family alleged that their due process rights were violated because the decision was not based on clear and convincing evidence. A.R. 14.  The Chung family also asserted that there was no clear and convincing evidence that they committed fraud and no evidence in the record that their applications were "invalid or problematic." A.R. 15. Because of this lack of evidence, the Chung family asserted that the government violated their due process rights by cancelling their immigration status. A.R. 16. Furthermore, the Chung family asserted that the government should be estopped from removing them because of the alleged due process violations and the misconduct by Mr. Sustaire, an employee of the government. A.R. 17.

On March 9, 2006, the Board adopted and affirmed the immigration judge's decision.[6] A.R. 2.  The Board noted that the Chung family was not ordered removed because of fraud, and that the fraud charge had been withdrawn. Id.  The record contained no evidence that the members of the Chung family were in possession of valid entry or immigration documents at the time of their entry into the United States in 2000-2001. A.R. 3.  With respect to estoppel, the Board found that the Chung family has not established that their removal amounts to an

---

[6]   The Board may properly review questions of law de novo, based on the entire record. See 8 C.F.R. § 1003.1(d)(3)(ii) (2006).

injustice. Id. The Chung family was "not eligible for lawful permanent residence status at the time they received that status; they remained ineligible for lawful permanent residence at the time" of the decision by the immigration judge. Id. For these reasons, the Chung family's appeal was dismissed. Id.

## SUMMARY OF ARGUMENT

The Chung family's entry into the United States without valid immigration documents is lawful grounds for ordering them removed from the United States under INA § 237(a)(1)(A). First, petitioners admitted the allegations and the grounds of removability. Second, the absence of evidence of petitioners' involvement in the production of fraudulent documents is completely irrelevant to the charge. Third, regardless of whether the application itself was proper, the improper processing of the application, such as the non-existent interview and the fabrication of other supporting documents, made the resulting approval invalid. Finally, by petitioners' own admissions, the testimony of the investigator, and the testimony of Mr. Sustaire, petitioners plainly were never eligible for adjustment of status based on an employment-based application, having entered in 1992 on non-immigrant visas, having neither the qualifications nor the job offer nor the other documentation required, and having no visa immediately available. The Board therefore neither erred nor abridged any right to due process because removability was sufficiently established.

Given that petitioners are removable as charged, there is no basis for the Court to equitably estop the government from removing petitioners. At the outset, this Court lacks jurisdiction under its precedent decision in <u>Alcaraz v. INS</u> to estop the execution of the final orders of removal against the Chung family to the extent

13

that the Chung family assert a cause or claim arising from the decision or action by executive agencies to commence proceedings, adjudicate cases, or execute removal orders. Assuming jurisdiction, the United States government should not be estopped from removing the Chung family due to the lack of evidence that they knowingly participated in fraud committed on their behalf. The fraud was a crime against the government committed by a government employee acting outside of his official capacity, and therefore there is no affirmative misconduct by the government, no knowledge of the facts by the party to be estopped, and no intent by the party to be estopped that the Chung family would rely on the fraud. Estoppel in this case would directly and unduly damage the public interest in enforcing the immigration law and procedures of the United States because the Chung family was never and is not presently eligible for status in the United States, and seeks only to completely avoid application of the law. Finally, substantial evidence in the record supports the Board's finding that petitioners have not demonstrated sufficient injustice, because they in fact benefitted from the fraud, and they have not demonstrated that injustice resulted from their reasonable reliance on the fraud. Petitioners learned of the fraud in 1999 but then re-entered the United States in 2000-2001 without valid immigration documents, and they have taken no steps to obtain lawful status or to mitigate the disruption to their lives that they assert as the sole basis for estoppel.

## ARGUMENT

## I.    The Board Correctly Determined that the Chung Family Is Removable

### A.    Scope and Standard of Review

Where the Board provides its own reasoning as it did in this case regarding

the merits of the Chung family's appeal, the Court reviews the decision of the

Board, along with any findings of fact from the decision of the immigration judge

upon which the Board relied.  8 C.F.R. § 1003.1(d)(3); see also Acewicz v. INS,

984 F.2d 1056, 1059 (9th Cir. 1993).  "[T]he administrative findings of fact are

conclusive unless any reasonable adjudicator would be compelled to conclude to

the contrary."  INA § 242(b)(4)(B), 8 U.S.C. § 1252(b)(4)(B).  This statute

essentially codifies the "substantial evidence" standard.  Fisher v. INS, 79 F.3d

955, 961 (9th Cir. 1996) (en banc); Ghaly v. INS, 58 F.3d 1425, 1429 (9th Cir.

1995).

This Court reviews questions of law de novo, "giving deference to the

[Board]'s interpretation unless that interpretation is contrary to the plain and

sensible meaning of the statute."  Almaghazar v. Gonzales, 457 F.3d 915, 920 (9th

Cir. 2006) (quoting Simeonov v. Ashcroft, 371 F.3d 532, 535 (9th Cir. 2004), cert.

denied, 543 U.S. 1052, 125 S. Ct. 887 (2005)).  Legal issues of jurisdiction, due

process, and equitable estoppel are also reviewed de novo.  See Ramirez-

Alejandre v. Ashcroft, 319 F.3d 365, 377 (9th Cir. 2003) (en banc); Salgado-Diaz

v. Gonzales, 395 F.3d 1158, 1162 (9th Cir. 2005), as amended.

**B.    Neither the Statutory Framework that Supported the Charge of Removability Nor the Orders of Removal Imply the Necessity of Fraud or Willful Misrepresentation to Support Removal**

Congress has established specific categories of aliens who shall be removed by order of the Attorney General. See INA § 237(a), 8 U.S.C. § 1227(a). In particular, "[a]ny alien who at the time of entry or adjustment of status was within one or more of the classes of aliens inadmissible by the law existing at such time is deportable." INA § 237(a)(1)(A), 8 U.S.C. § 1227(a)(1)(A). Congress has also specifically defined aliens who are inadmissible. INA § 212(a), 8 U.S.C. § 1182(a). In particular,

> any immigrant at the time of application for admission–
> (I)  who is not in possession of a valid unexpired immigrant visa, reentry permit, border crossing identification card, or other valid entry document required by this chapter, and a valid unexpired passport, or other suitable travel document, or document of identity and nationality if such document is required under the regulations issued by the Attorney General under section 1181(a) of this title . . . is inadmissible.

INA § 212(a)(7)(A)(i), 8 U.S.C. § 1182(a)(7)(A)(i).[7] The Chung family admitted

---

[7]  The Chung family did not request waivers under INA § 212(k) of the INA § 212(a)(7) grounds of inadmissibility, nor would they qualify. They were not "otherwise admissible" and Byung either knew his family was inadmissible or did not reasonably ascertain their admissibility prior to their re-entry in 2000-01. See INA § 212(k), 8 U.S.C. § 1182(k). Byung knew there were problems with his family's immigration status in 1999. A.R. 63. Even if the Chungs were eligible for a waiver, failure to request such a waiver before the immigration judge or

16

the factual allegations supporting the allegation of their inadmissibility on the grounds stated in INA § 212(a)(7)(A)(i), and conceded removability under INA § 237(a)(1)(A). A.R. 79, 81. None of the statutory provisions involved either mention or require fraud or even knowledge of fraud. See, e.g., 8 U.S.C. §§ 1182(a)(7)(A)(i) & 1227(a)(1)(A). The charge of procuring documentation through fraud or willful misrepresentation had been withdrawn prior to the Chung family conceding removability. A.R. 78-79. The immigration judge and the Board found the Chung family removable pursuant to INA § 237(a)(1)(A) because they did not possess valid documentation alone, not for any action on the part of the Chung family in procuring the invalid documents.[8] A.R. 2-3, 41-42. In their opening brief to this Court, the Chung family has not raised any challenge to the application of these statutory provisions in their case, and no issue of removability therefore remains.

---

before the Board failed to exhaust that claim, and precluded any judicial review on that issue. INA § 242(d)(1), 8 U.S.C. § 1252(d)(1).

[8] The Chung family's entire appeal seems to rely on the mistaken belief that they were charged and found removable because of their unsubstantiated fraudulent actions. Compare e.g., Pet. Bf. at 19 (stating without citation that "[t]he [immigration judge]'s conclusion that Mr. Chung actively and knowingly participated in fraud is based purely on unrelated questionable acts of Mr. Sustaire"), with, A.R. 2 (Board noting that "the [Chung family was] not ordered to be removed because of a finding of a fraud"), and A.R. 42 (immigration judge stating "the only issue before the Court today is whether as the [Chung family] sit[s] here today they have valid documents authorizing them to remain in the United States and they do not").

17

### C.    The Chung Family's Concession of Removability Itself Is a Sufficient Basis to Support the Removal Order Against Them

"If the respondent admits the factual allegations and admits his or her removability under the charges and the immigration judge is satisfied that no issues of law or fact remain, the immigration judge may determine that removability as charged has been established by the admissions of the respondent." 8 C.F.R. § 1240.10(c) (2004). "[N]o further evidence need be received as to any facts admitted during the pleading." 8 C.F.R. § 1240.10(d) (2004). "The government has the burden of proving that an alien is deportable. However, if the alien concedes deportability as Solis did in this case, the government's burden on this issue is satisfied." Florez-de Solis v. INS, 796 F.2d 330, 333 (9th Cir. 1986) (citing Estrada v. INS, 775 F.2d 1018, 1020 (9th Cir.1985)); see also Selimi v. INS, 312 F.3d 854, 860 (7th Cir. 2002) ("such an admission has the effect of withdrawing an issue from controversy"). The Chung family's concession of removability is a sufficient basis for the order of removability, and forecloses any evaluation of the evidence that supports the government's charge of removability. See Florez-de Solis v. INS, 796 F.2d at 333; Selimi v. INS, 312 F.3d at 860 ("Having formally conceded that he was [removable, petitioner] may not now contend that the INS's proof of [removability] was insufficient."); see also Karim v. Gonzales, 424 F.3d 109, 112 (1st Cir. 2005) (holding that a concession of

18

removability, like a guilty plea, waives objections to antecedent events); cf. In re Crystal Properties, Ltd., L.P., 268 F.3d 743, 752 (9th Cir. 2001) (judicial admissions before a district court are binding on appeal).  The Chung family admitted the factual allegations and conceded removability without qualification or objection, and therefore waived any objection to their inadmissibility or removability.  See Florez-de Solis v. INS, 796 F.2d at 333; Karim, 424 F.3d at 112.

The Chung family's admissions of the factual allegations and unqualified concession of removability, through counsel, precludes any argument that the "clear and convincing evidence" standard was not satisfied.[9] Pet. Bf. at 5, 17-18. Moreover, petitioners simply assume in their argument that participation in the bribery scheme was required.  See Pet. Bf. at 17-18.  As noted above, petitioners' applications were not processed in accordance with the law,[10] and therefore the

_____

[9] Even if their concession is not dispositive of removability, the Chung family's admissions and concessions are at least sufficient evidence of their failure to possess valid documentation as required for admissibility under INA § 212(a)(7)(A)(i)(I). 8 U.S.C. § 1182(a)(7)(A)(i)(I); see State Farm Mut. Auto. Ins. Co. v. Porter, 186 F.2d 834, 843 (9th Cir. 1951) ("It is a well settled rule that 'an admission is equivalent to affirmative testimony for the party offering it.'" (quoting Wigmore on Evidence, 3d. Sec. 1048)).

[10] In phrases on pages 17 and 19 of their opening brief, with no other analysis or development, petitioners also mention that there was no evidence that their applications were in fact improper.  See Pet. Bf. at 17, 19.  In context, each of these statements relates back only to a discussion of the fraud issue.  But even if these assertions are not dependent on the fraud issue, the suggestion that there is no evidence that the application was not valid fails in every way.  First, petitioners admitted the allegations and the grounds of removability.  Mr. Sustaire's

19

Board correctly determined that the resulting documents were not valid. The

Chung family sought admission in 2000-2001 without valid documents, and they

are removable on that basis.[11] Because the Chung family's admissions of the

---

destruction of their application does not affect that. Second, regardless of whether the application was proper, the improper processing of the application, such as the non-existent interview and the fabrication of other supporting documents, made the resulting approval invalid. Mr. Sustaire's subsequent destruction of their application does not affect that. Third, by Byung's own admissions, the testimony of the investigator, and the testimony of Mr. Sustaire, petitioners plainly were never eligible for adjustment of status based on an employment-based application, having entered in 1992 on non-immigrant visas, having neither the qualifications nor the job offer nor the other documentation required, and having no visa immediately available. See INA §§ 203(b)(2), 211 & 245(a), 8 U.S.C. §§ 1153(b)(2), 1181 & 1255(a) (West 1992); Sulit v. Schiltgen, 213 F.3d 449, 454 (9th Cir. 2000) ("The Sulits were already subject to a final order of deportation and were not eligible for adjustment of status at the time it was granted. Thus, the INS's failure to rescind the Sulits' adjustment of status does not, under the facts of this case, preclude its ability to deport them pursuant to the BIA's final order of deportation."). Mr. Sustaire's destruction of their application does not affect that. Even if the employment-based visa had been properly approved, it would have been invalid upon Byung's failure to work for the sponsoring business. In addition, if Byung was eligible to lawfully adjust, he should have done so when he says he learned of the fraud in 1999, prior to departing the United States and then seeking admission possessing only invalid documents.

[11] Petitioners' other arguments on the subject of removability are either self-defeating or inapplicable to their case. The suggestion that "the court must have a set of rules for establishing a burden that DHS must meet before ordering the removal of legal resident[,]" Pet. Bf. at 5, immediately precedes discussion of the "clear and convincing evidence" standard. In the body of the argument, petitioners refer to the their "status . . . for purposes of 8 U.S.C. § 1182(c) relief" (Pet. Bf. at 7), when they sought no such relief, and such relief was repealed in 1996, long prior to commencement of petitioners' removal proceedings, and petitioners cannot have relied on the availability of such relief when they departed and re-entered in 2000. Petitioners' discussion of "regulations on reconsideration and reopening" "lowering the burden to determine deportation," "not constru[ing

factual allegations and concession of removability is a sufficient basis to support

the order of removal.  8 C.F.R. §§ 1240.10(c) & (d) (2004); <u>Florez-de Solis v. INS</u>,

796 F.2d at 333.

In petitioners' opening brief, they assert that there was not clear and

convincing evidence of removability, and therefore the Board erred when it

determined that the immigration judge's decision regarding removability was not

clearly erroneous.  <u>See</u> Pet. Bf. at 16-19.  Petitioners then assert that because the

Board was wrong, their right to due process was violated.  <u>See</u> Pet. Bf. at 19-20.

The same argument is simply labeled a matter of due process.

> This argument is an abuse of discretion challenge
> re-characterized as an alleged due process violation.  This court
> has previously held that abuse of discretion challenges to
> discretionary decisions, even if recast as due process claims, do
> not constitute colorable constitutional claims.

<u>Bazua-Cota v. Gonzales</u>, 466 F.3d 747, 749 (9th Cir. 2006) (<u>citing</u> <u>Torres-Aguilar</u>

<u>v. INS</u>, 246 F.3d 1267, 1271 (9th Cir. 2001).  Regardless, the decision was not

erroneous.

---

some unidentified] statute, also appears to have no application to their case.  <u>See</u>
Pet. Bf. at 8.  Similarly, petitioners' argument regarding the availability of habeas
corpus review of denial of suspension of deportation, Pet. Bf. at 9-16, has no
relevance either to the facts of their case or to judicial review of a final order of
removal under INA § 242, which replaced the prior scheme of judicial review in
1996.

**II.    The Government Should Not Be Estopped from Removing the Chung Family from the United States**

In their opening brief, petitioners assert that there was insufficient evidence of removability, therefore the removal order violated due process, and therefore DHS should be estopped from removing petitioners. Pet. Bf. at 21. As noted above, there was ample evidence of removability, and that is the sole basis for their estoppel claim, so the entire estoppel claim fails. However, assuming that petitioners have asserted an estoppel claim that does not depend on the issue of removability,[12] such a claim still fails.

**A.    This Court Lacks Jurisdiction to Grant the Relief Requested by the Chung Family under Its Precedent Decision in <u>Alcaraz v. INS</u>**

If petitioners' claim is that the government should be estopped from removing them from the United States in spite of their removability, the Court lacks jurisdiction to address that claim. The absence of a viable challenge to removability means that petitioners would only be challenging the DHS decision to commence proceedings, or the Board decision to adjudicate the cases, or the DHS decision to execute the removal orders. The Court has held that it lacks jurisdiction to review those matters:

> Under 8 U.S.C. § 1252(g), we lack jurisdiction to consider "to

---

[12] There is no need to discuss estoppel of removal if the Court determines that the Board erred when it determined petitioners are not removable, so this argument assumes removability.

22

hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders····" 8 U.S.C. § 1252(g) (emphasis added).

Alcaraz v. INS, 384 F.3d 1150, 1160-61 (9th Cir. 2004).  If the petitioners are not removable the Court should not reach the issue of estoppel.  If petitioners seek estoppel in spite of their conceded removability, the Court lacks jurisdiction to review that claim.  Id.

**B.    Assuming Jurisdiction, the Chung Family Has Not Demonstrated that the Government Should Be Equitably Estopped in the Case**

**1.    The Doctrine of Equitable Estoppel Should Be Applied Extremely Rarely Against the Enforcement of Federal Immigration Statutes**

The Supreme Court has repeatedly rejected claims that the government should be equitably estopped from enforcing the public laws.  See, e.g., Filor v. United States, 76 U.S. (9 Wall.) 45, 49 (1869); Federal Crop Ins. Corp. v .Merrill, 332 U.S. 380, 68 S. Ct. 1 (1947); Heckler v. Community Health Services of Crawford County, Inc., 467 U.S. 51, 104 S. Ct. 2218 (1984).  Indeed, "[f]rom [its] earliest cases, [the Supreme Court has] recognized that equitable estoppel will not lie against the Government as it lies against private litigants." Office of Personnel Management v. Richmond, 496 U.S. 414, 419, 110 S. Ct. 2465 (1990); cf. Lee v. Munroe & Thornton, 11 U.S. (7 Cranch) 366 (1813) (government not bound as private parties are by mistaken representations of agent); The Floyd Acceptances,

23

74 U.S. (7 Wall.) 666 (1868) (government not bound to honor bills of exchange where no statutory authority existed for bills' issuance).  Although the Supreme Court is "hesitant . . . to say that there are *no* cases in which the public interest in ensuring that the Government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government[,]" Heckler, 467 U.S. at 60-61, it has consistently reversed every court of appeals that has found that estoppel lies against the government.  See INS v. Miranda, 459 U.S. 14, 16-17, 103 S. Ct. 281 (1982); INS v. Hibi, 414 U.S. 5, 8-9, 94 S. Ct. 19 (1973); Montana v. Kennedy, 366 U.S. 308, 314-15, 81 S. Ct. 1336 (1961); see generally Office of Personnel Management v. Richmond, 496 U.S. at 424-25.

One reason for such extreme reticence to apply equitable estoppel doctrine to actions of the government is the consequence to fundamental constitutional principles such as the separation of powers.  The effect of estopping the government from enforcing statutes based on the misconduct of certain Executive Branch employees or agents is to raise those agents of the Executive Branch to the status of legislators.  If the government is estopped, the actions of such agents has overruled the intent and even the explicit conditions established by Congress.  Indeed, nearly two hundred years ago, when there were only a fraction of the number of Federal employees that there is today, Justice Story observed that the

government's "operations are so various, and its agencies so numerous and
scattered, that the utmost vigilance would not save the public from the most serious
losses" if equitable doctrines applicable to private suits were to govern in cases
involving the government.  United States v. Kirkpatrick, 22 U.S. (Wheat.) 720, 735
(1824).  Equitable remedies are not available where Congress has provided a
remedy at law.  See INS v. Pangilinan, 486 U.S. 875, 883-85, 108 S. Ct. 2210
(1988); INS v. Hibi, 414 U.S. at 8-9.  "When the government is unable to enforce
the law because the conduct of its agents has given rise to an estoppel, the interests
of the citizenry as a whole in obedience to the rule of law is undermined." Heckler,
467 U.S. at 60.  Thus, "Congress' legislative authority should not be subordinated
to the action of a wayward or unknowledgeable administrative official." Lavin v.
Marsh, 644 F.2d 1378, 1383 (9th Cir. 1981).

For similar reasons, equitable estoppel against the Federal government in the
immigration context should have a particularly high bar.  Miranda, 459 U.S. at 18
("Montana and Hibi make clear that neither the Government's conduct nor the harm
to the [alien] is sufficient to estop the Government from enforcing the conditions
imposed by Congress for residency in this country.").  As the Supreme Court
stressed in Miranda, the immigration laws are of exceptional public interest and the
courts must give "[a]ppropriate deference" to the government:

An increasingly important interest, implicating matters of broad

25

> public concern, is involved in cases of this kind. Enforcing the immigration laws, and the conditions for residency in this country, is becoming more difficult. Moreover, the INS is the agency primarily charged by Congress to implement the public policy underlying these laws. Appropriate deference must be accorded its decisions.

459 U.S. at 18-19 (citations omitted); see also INS v. Pangilinan, 486 U.S. at 883-84 (discussing the unavailability of equitable estoppel against the government in a naturalization case, explaining that administration of the immigration laws is best left to the agencies, and stressing that courts can not interfere in a manner inconsistent with applicable statutes).

In this Circuit, the doctrine of equitable estoppel has been applied against the United States, but noted that "[i]t is well settled, however, that the government may not be estopped on the same terms as a private litigant." Watkins v. United States Army, 875 F.2d 699, 706 (9th Cir. 1989) (en banc) (citing Heckler, 467 U.S. at 60). Estoppel against the government is only possible where the Court finds "affirmative misconduct by the government and . . . that the government's conduct will cause a serious injustice and that estoppel will not cause undue harm to the public interest." Watkins v. United States Army, 875 F.2d at 706 (citing Wagner v. Director, Federal Emergency Management Agency, 847 F.2d 515, 519 (9th Cir. 1988) (quoting Morgan v. Heckler, 779 F.2d 544, 545 (9th Cir. 1985))); see Mukherjee v. INS, 793 F.2d 1006, 1008-09 (9th Cir. 1985) (regarding the

26

requirement of affirmative misconduct); Williams v. INS, 795 F.2d 738, 745 n.4

(9th Cir. 1986) (citing INS v. Hibi, 414 U.S. at 8, and Santiago v. INS, 526 F.2d

488, 491 (9th Cir. 1975) (en banc), cert. denied, 425 U.S. 971, 96 S. Ct. 2167

(1976)) (same). This Court has further applied equitable estoppel on rare occasions

against the government in immigration cases. See Salgado-Diaz v. Gonzales, 395

F.3d 1158 (the Border Patrol violated Salgado's Fourth and Fifth Amendment

rights improperly returning him to Mexico, and his subsequent re-entry placed him

in exclusion proceedings based on his re-entry in which he was ineligible to seek

the relief that he could have received in his original deportation proceedings. The

Court held that equitable estoppel "precludes the INS from relying on the

consequences of its own alleged affirmative misconduct to insulate its misconduct

from review." 395 F.3d at 1165.).

### 2. The Chung Family Has Failed to Demonstrate a Basis for Equitable Estoppel in Their Case

The equitable estoppel claim asserted by the Chung family fails to meet this

Court's requirements in virtually every particular. An alien bears a "heavy" burden

to establish entitlement to equitable estoppel against the government. See Heckler,

467 U.S. at 61.

Based on this Court's interpretation of equitable estoppel doctrine, the Court

held that:

> [b]efore the government will be estopped, however, two
> additional elements must be satisfied beyond those required for
> traditional estoppel. First, "[a] party seeking to raise estoppel
> against the government must establish 'affirmative misconduct
> going beyond mere negligence'; even then, 'estoppel will only
> apply where the government's wrongful act will cause a serious
> injustice, and the public's interest will not suffer undue damage
> by imposition.'"

Watkins, 875 F.2d at 709. If these "stringent" "threshold requirements" are

satisfied, the court then considers four traditional elements of estoppel:

> (1) The party to be estopped must know the facts; (2) he must
> intend that his conduct shall be acted on or must so act that the
> party asserting the estoppel has a right to believe it is so
> intended; (3) the latter must be ignorant of the true facts; and (4)
> he must rely on the former's conduct to his injury.

Id. at 706-07, 709 (citing United States v. Wharton, 514 F.2d 406, 412 (9th Cir.

1975), itself quoting United States v. Georgia-Pacific Corp., 421 F.2d 92, 96

(9th Cir. 1970)).

> a.   There Has Been No Affirmative Misconduct
>       Against the Chung Family by the Government

Petitioners have not established affirmative misconduct against them by the

Board or DHS. Petitioners assert that Mr. Sustaire's fraud against the government

satisfies the requirement for affirmative misconduct. However, although Mr.

Sustaire's crimes affected the Chung family and others, those crimes were not

affirmative misconduct against the Chung family, but rather were misconduct

against the government, the agency, the people of the United States, and bona fide

applicants for employment-based adjustment of status. Moreover, the criminal acts of a government employee, not only outside of the scope of his employment but also in direct contravention of his employment, cannot be imputed to the government on agency principles any more than if he had murdered one of the members of the Chung family. Mr. Sustaire simply was not an agent of the INS with regard to those acts. This sort of criminal misconduct of a rogue employee is not affirmative misconduct by the government.[13]

At worst, the only failing attributable to the government in its execution of its duties was its failure to detect Mr. Sustaire's misconduct as it occurred, or before the Chung family submitted their application, or when their documents were issued, or in the 1994 Inspector General investigation before the Chung family had been in the United States for long. But petitioners do not assert that this amounts

---

[13] For example, if Mr. Sustaire took bribes as an employee of a private business, absent other factors, his employer-business would not be civilly or criminally liable for his crimes outside the scope of his employment. The estoppel standard is even more stringent. Watkins, 875 F.2d at 706-07. In petitioners' opening brief, they assert that "[e]stoppel . . . is appropriate where Petitioners are ignorant of the true criminal actions committed by the Government . . . ." Pet. Bf. at 22 (citing S & M Inv. Co. v. Tahoe Regional Planning Agency, 911 F.2d 324 [(9th Cir. 1990), cert. denied, 498 U.S. 1087, 111 S. Ct. 963 (1991)]). The case cited did not find affirmative misconduct, and does not involve or even mention criminal actions at all, either by the government or by a rogue government employee acting outside the scope of his employment. See S & M Inv. Co. v. Tahoe Regional Planning Agency, 911 F.2d at 329. Respondent is unaware of any case addressing such circumstances as a basis for estoppel. Cf. Salgado-Diaz, 395 F.3d at 1165 (government agents violated the constitutional rights of an alien within the scope of their agency).

to affirmative misconduct, and properly so, because mere negligence, failure to investigate, failure to follow through with an investigations, and issuance of defective or invalid documents are insufficient to amount to affirmative misconduct for estoppel.  See Watkins, 875 F.2d at 706-07; Choe v. INS, 11 F.3d 925, 947-48 (9th Cir. 1993); Santiago v. INS, 526 F.2d 488, 493 (9th Cir. 1975) (en banc) (no affirmative misconduct where immigration officer admitted an otherwise excludable alien).

           b.     The Misconduct Did Not Cause Serious Injustice to the Chung Family

Petitioners have not established that their circumstances amount to a serious injustice resulting from any affirmative misconduct.  Petitioners assert that it is a severe injustice to remove them now, more than a decade after Mr. Sustaire's fraud, during which time they have built stable lives in the United States.  See Pet. Bf. at 22.  Petitioners also assert, without citation to the record, explanation, or analysis that "they don't have long term ties" in Korea.  Id.  These assertions are insufficient.

Even if Mr. Sustaire's crimes could be construed as affirmative misconduct by the government, the direct result of the misconduct operated to the benefit of the Chung family, granting their wish to remain in the United States indefinitely, to work in the United States, and to return to the United States freely after their trips

to Korea or elsewhere outside the United States. Moreover, taking away a privilege erroneously granted is not sufficient to require estoppel. Cf. Choe v. INS, 11 F.3d at 947-48.

The government does not contest that the Chung family has established contacts in the United States, and that removal at this time will cause disruption and inconvenience in their lives. However, the burden of establishing serious injustice is on the Chung family, the Board found that they had not demonstrated injustice, and substantial evidence in the record supports that finding. First, there is *no* evidence that the Chung family has not maintained contacts in Korea, there *is* evidence that all of the members of the family have returned to Korea during their residence in the United States, and the absence of evidence that any member of the family has applied to naturalize in the United States could permit an inference that they maintain Korean citizenship to eventually return there. Second, merely immigrating is not an injustice. The Chung family chose to immigrate to the United States of their own accord in 1992, for instance. There is no evidence that the Chung family has not maintained Korean language proficiency or does not possess extended family, financial, or other resources to facilitate their transition back to Korea, and they have known that their status was defective since 1999. Third, there is no injustice when petitioners lose something for which they were never eligible. "[E]stoppel against the government is unavailable where petitioners

have not lost any rights to which they were entitled." <u>Sulit v. Schiltgen</u>, 213 F.3d

at 454 (<u>citing</u> <u>Santiago v. INS</u>, 526 F.2d at 493).  Fourth, there is no evidence that

the Chung family has not used their time in the United States connections and skills

that may permit them to return to the United States lawfully if they desire.[14]

Finally, all or part of the disruption to the lives of the Chung family is not due to

the alleged misconduct but rather is a proximate result of the Chung family's

failure to mitigate their situation after learning that their status was defective in

1999.  The Chung family offered the Board, and therefore this Court, no evidence

to permit an assessment of whether the disruption to their lives was due to Mr.

Sustaire's criminal conduct or due to their own inaction since learning of the fraud.

Evidence in the record therefore does not compel a finding contrary to that reached

by the Board that the Chung family have not demonstrated injustice.  <u>See</u> 8 U.S.C.

§ 1252(b)(4)(B).

    c.    Estoppel in this Situation Unduly Damages the
           Public's Interest

Petitioners have not established that estoppel in their circumstances does not

---

[14] In the present case, there will be barriers to efforts by the Chung family
to re-enter the United States, but these are due to choices by the family
themselves, and in no way due to misconduct by the government.  If the Chungs
are removed pursuant to a removal order at the conclusion of this case, their return
will be restricted for ten years unless they obtain a waiver.  <u>See</u> 8 U.S.C.
§ 1182(a)(9)(A).  Had the Chungs acted to secure valid status in or after 1999, or
voluntary departed when that privilege was available through DHS or during their
removal proceedings, there would be no such barrier.  <u>See</u> <u>id.</u>; 8 U.S.C. § 1229c.

damage the public's interest. In fact, petitioners do not address this requirement in any way. See Pet. Bf. Because this requirement is a prerequisite for petitioners to satisfy their burden for estoppel, see Watkins, 875 F.2d at 709, petitioners have not demonstrated the appropriateness of estoppel.

Moreover, estoppel in the present situation would clearly unduly damage the public's interest. As noted above, the public has a significant interest in the government's ability to make, implement, and enforce immigration policy, and other laws, as well as procedures to facilitate implementation and enforcement of the law. In this case, estoppel would preclude the enforcement of statutory standards for employment-based visas and adjustment of status. The government would be precluded from removing removable aliens and aliens who were never eligible for permanent residence in the United States would be permitted to remain in the United States permanently, possibly at the expense of other lawful applicants who have been awaiting approval of their applications for years. In addition, estoppel in this situation would destroy the value of the agency procedures established to ensure compliance with the law.

In this situation, these important interests are directly at stake. This is very much the type of situation described by this Court in Watkins in which estoppel is not possible. See Watkins, 875 F.2d at 706-09. This is in clear contrast to the situation in Salgado-Diaz, in which the Court ordered equitable estoppel against

33

the government in an immigration context.  In <u>Salgado-Diaz</u>, government officers

stopped Salgado-Diaz in violation of his Fourth Amendment rights, and then

transported him across the border into Mexico in spite of his pending deportation

proceedings.  See <u>Salgado-Diaz</u>, 395 F.3d at 1161.  Six years later, Salgado-Diaz

was caught re-entering the United States with a false passport, and under those

circumstances he was placed in exclusion proceedings in which he was ineligible to

seek the relief that had been available in the deportation proceedings pending at the

time his rights were violated, and he received ho hearing into his eligibility for that

relief.  See <u>Salgado-Diaz</u>, 395 F.3d at 1161.  The Court held that equitable estoppel

"precludes the INS from relying on the consequences of its own alleged affirmative

misconduct to insulate its misconduct from review" and estopped the government

from using the re-entry that resulted from government misconduct to bar Salgado-

Diaz from a hearing into relief for which he was prima facie eligible.  <u>Salgado-

Diaz</u>, 395 F.3d at 1165-66.  The government simply was required to carry out its

routine operations and to give Salgado-Diaz a hearing to adjudicate his original

claim for relief.

      In contrast, the Chung family do not claim they were eligible for adjustment

of status at the time of Mr. Sustaire's fraud.  They do not claim that they did not

know that their status was obtained though fraud at the time they departed the

United States and then returned in 2000 and 2001.  They do not even claim to be

eligible to adjust their status now.  The Chung family does not seek a hearing to

seek relief from removal, they merely seek to ignore the laws of the United States.

Estoppel in this case produces a result directly contrary to substantive immigration

laws and procedures established by Congress, and unduly damages the public's

interest in proper management of immigration.  Estoppel of the government is

therefore not permitted in this case.  See INS v. Pangilinan, 486 U.S. at 883-85;

INS v. Hibi, 414 U.S. at 8.

> ### d.    The Is No Evidence of Agency Knowledge

There is no evidence in this case that the party to be estopped had knowledge

of the facts of the misconduct.  The party to be estopped from the execution of the

removal orders against the Chung family is DHS, which had no knowledge of the

facts at the time.  In fact, not only was Mr. Sustaire not acting in an official

capacity for the agency when he accepted bribes and issued fraudulent documents,

but he also affirmatively prevented the agency from detecting his fraud by

destroying the files in petitioners' cases.  There is no evidence that anyone else in

the agency knew of the fraud, and there is every indication, as per the cases now

brought, that if anyone else had known, the misconduct would not have permitted.

In the absence of evidence of knowledge of the misconduct by the party to be

estopped, petitioners have failed to satisfy even the traditional requirements for

private, non-government estoppel.

e.    There Is No Evidence of Agency Intent

There is no evidence in this case that the party to be estopped had any intent that the Chung family would rely on Mr. Sustaire's misconduct to their detriment. DHS and its predecessor agency had no knowledge of the fraud, and therefore no intent in that regard.  Moreover, there is even no evidence that Mr. Sustaire intended to harm the Chung family.  His apparent intent was exactly the opposite, to grant their wish for indefinite lawful status in the United States for their benefit. At worst, once he received their money, he had no intent, no concern regarding whether they relied on the documents he produced, and no interest in whether they remained in the United States or departed.  In the absence of evidence of intent by the party to be estopped that the Chungs should rely on the act of misconduct, petitioners have failed to satisfy even the traditional requirements for private, non-government estoppel.

f.    The Chung Family Knew of the Fraud in 1999

There is little evidence that the Chung family knew of Mr. Sustaire's fraud at the time it occurred, although they were clearly not eligible at the time, and never met the requirements that they were aware, such as working for Mr. Choe's company.  There is no dispute, however, that the Chung family learned of the fraud in 1999 and continued to rely on the defective documents regardless.  They knew or should have known that their documents were either defective or completely

fictitious at the time they left the United States and returned in 2000 and 2001.

> g.   Any Reasonable Reliance Ended in 1999 and the
>       Chung Family Has Not Demonstrated Diligence

Regardless of whether the Chung family was entitled to rely on Mr.

Sustaire's fraudulent documents at the time they were received, despite the fact that

they were clearly not eligible at the time, and never met the requirements that they

were aware, such as working for Mr. Choe's company, estoppel is not permitted

because reliance was no longer reasonable once the Chung family knew of the

fraud in 1999. Although the Chung family may not have been required to alert the

agency that their documents were tainted, or to volunteer as witnesses, to receive

relief in equity, they must have acted diligently. See, e.g., Wood v. Carpenter, 101

U.S. 135, 143 (1879); see In re George, 177 F.3d 885, 890 (9th Cir. 1999), cert.

denied sub nom., George v. City of Morro Bay, 528 U.S. 1135, 120 S. Ct. 978

(2000). They cannot have relied on the permanence of their status. They could

have sought lawful status after 1999, and in the absence of such status they could

not reasonably rely upon their documents to permit them lawful re-entry into the

United States. If they departed, they should not expect to re-enter, and if they did

not depart, they should expect to be removed. Cf. Fernandez-Vargas v. Gonzales,

--- U.S. ----, 126 S. Ct. 2422, 2433 (2006).[15] Given that necessary expectation,

---

[15] Fernandez-Vargas asserted an equitable argument that a change in the
law should not be applied to him, permitting him to continue his unlawful status

diligence required them not only to forego committing to and enhancing their lives in the United States, but also to mitigate their prior reliance. Due diligence required the Chung family to prepare themselves, as much as possible, for the day when they would be required to return to Korea.

In the present case, there is no evidence of diligence whatsoever. Although they suspected something was wrong as soon as Byung did not begin work for Mr.

---

indefinitely:

> Fernandez-Vargas did not, however, take advantage of the statutory warning, but augmented his past 15 years of unlawful presence by remaining in the country into the future subject to the new law, whose applicability thus turned not on the completed act of reentry, but on a failure to take timely action that would have avoided application of the new law altogether. To be sure, a choice to avoid the new law before its effective date or to end the continuing violation thereafter would have come at a high personal price, for Fernandez-Vargas would have had to leave a business and a family he had established during his illegal residence. But the branch of retroactivity law that concerns us here is meant to avoid new burdens imposed on completed acts, not all difficult choices occasioned by new law. What Fernandez-Vargas complains of is the application of new law to continuously illegal action within his control both before and after the new law took effect. He claims a right to continue illegal conduct indefinitely under the terms on which it began, an entitlement of legal stasis for those whose lawbreaking is continuous.

126 S. Ct. at 2433. The government does not attribute "illegal conduct" to the Chung family, but they do similarly seek a right to lawfully remain in the United States in spite of the fact that they are not eligible to remain under the immigration laws of the United States.

Choe's company, the Chungs do not assert that they sought lawful status when that suspicion was confirmed in 1999. Although they returned to Korea after that time, the Chung family does not assert any attempt to mitigate the "injustice" that they knew or should have known was coming. Instead, they continued to "build" their lives in the United States for several more years at the expense of "long term ties" in Korea. In those years, the Chungs reduced, or should have reduced, the effect of departure from the United States to a level comparable to the disruption they experienced when then voluntarily came to the United States from Korea. The Chung family cannot demonstrate that reliance on Mr. Sustaire's fraud was reasonable after 1999, they have failed to demonstrate that they acted diligently upon learning of the fraud, and they therefore cannot establish that equitable estoppel is permitted in this case to estop their removal.

## CONCLUSION

For these reasons, the Court should dismiss or deny the petition for review.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General
Civil Division

DAVID V. BERNAL
Assistant Director
Office of Immigration Litigation


ANDREW C. MACLACHLAN
Attorney

LANCE L. JOLLEY
Law Clerk
Office of Immigration Litigation
Civil Division
United States Department of Justice
P.O. Box 878, Ben Franklin Station
Washington, D.C. 20044
(202) 514-9718

Date: December 11, 2006          Attorneys for Respondent

## STATEMENT OF RELATED CASES

Counsel for respondent states that the following cases share some common

facts as those presented in this case, and the same counsel for the various

petitioners, and counsel for petitioners raises some of the same general legal

issues:

| | |
|---|---|
| You, et al., v. Gonzales | 06-71949; |
| Park, et al., v. Gonzales | 06-71951; |
| Chee, et al., v. Gonzales | 06-71952; |
| Shin, et al., v. Gonzales | 06-71955, 06-74052; |
| Yook, et al., v. Gonzales | 06-72321; |
| Hak Kim, et al., v. Gonzales | 06-72370, 06-74024; |
| Jang, et al., v. Gonzales | 06-72372; |
| Duryol Kim, et al., v. Gonzales | 06-72376; |
| Lina Kim, et al., v. Gonzales | 06-72377; |
| Han, et al., v. Gonzales | 06-72473; |
| Hwang, et al., v. Gonzales | 06-72718; |
| Jung Hwan Kim, et al., v. Gonzales | 06-72719; |
| Geuntai Kim, et al., v. Gonzales | 06-72720; |
| Yoo, et al., v. Gonzales | 06-72721; |
| Sae Joon Kim, et al., v. Gonzales | 06-72725; |
| Son, et al., v. Gonzales | 06-72986; |
| Jin Wook Kim, et al., v. Gonzales | 06-73213; |
| Hong, et al., v. Gonzales | 06-73417; |
| Ahn, et al., v. Gonzales | 06-73723. |

In spite of these commonalities, these cases are not related in the context of Ninth

Circuit Rule 28-2.6(C).

Dated: December 11, 2006

_____
ANDREW C. MACLACHLAN
Attorney

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Respondent believes that the facts and legal arguments are adequately presented in the briefs and the record but defers to the Court's discretion as to whether oral argument would aid the decision-making process.


Dated: December 11, 2006      _____

                ANDREW C. MACLACHLAN
                Attorney


## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Federal Rule of Appellate Procedure 32 and Ninth Circuit Rule 32(e)(4), I certify that the Brief For Respondent:

    (1) was prepared using Times New Roman type, 14 point;

    (2) is monospaced;

    (3) has 10.5 or less characters per inch;

    (4) does not exceed 40 pages; and

    (5) contains 9707 words.


Dated: December 11, 2006      _____

                ANDREW C. MACLACHLAN
                Attorney

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of December, 2006, two copies of the

foregoing Brief for Respondent were served on petitioner by placing them in the

Department of Justice mail room for same day mailing, First Class postage

prepaid, addressed to counsel for petitioner at the address provided in his brief:

> Alex C. Park, Esq.
> Law Office of Alex C. Park
> 4675 Stevens Creek Blvd, Suite 100
> Santa Clara, CA  95051

> _____
> ANDREW C. MACLACHLAN
> Attorney
> Office of Immigration Litigation