1   ALEX C. PARK [SBN: 197781]
    LAW OFFICES OF ALEX C. PARK
2   4675 Stevens Creek Boulevard, Suite 100
    Santa Clara, CA 95051
3   Telephone:  (408) 246-1515
    Facsimile:  (408) 246-4105
4
    GEORGE G. BENETATOS  [SBN: 54986]
5   LAW OFFICE OF GEORGE G. BENETATOS
    244 California Street, Suite 300
6   San Francisco, California  94111
    Telephone:  (415) 398-2296
7   Facsimile:  (415) 398-2290

8   Attorneys for Plaintiffs

9                    UNITED STATES DISTRICT COURT

10                  NORTHERN DISTRICT OF CALIFORNIA

11                       SAN FRANCISCO DIVISION

12  BYUNG HOON CHUNG, individually; DUK      )   No. C 07 5554 EMC
    BONG CHUNG, individually; MYUNG BIN      )
13  CHUNG, individually; and KUO CHUL        )
    CHUNG, individually; on behalf of themselves )   **DECLARATION OF ALEX C. PARK IN**
14  and all others similarly situated;       )   **SUPPORT OF PLAINTIFFS'**
                                             )   **OPPOSITION TO DEFENDANTS'**
15             Plaintiffs,                   )   **MOTION TO DISMISS**
                                             )
16  v.                                       )
                                             )
17  MICHAEL MUKASEY, Attorney General of     )   Hearing
    the United States; DEPARTMENT OF         )   Date:      May 23, 2008
18  HOMELAND SECURITY; MICHAEL               )   Time:      10 a.m.
    CHERTOFF, Secretary of DHS; and DOES 1   )   Courtroom:  1
19  THROUGH 20, inclusive,                   )      The Honorable Samuel Conti
                                             )
20             Defendants.                   )

21  _____

22          Pursuant to Local Rule 7-5 and 28 U.S.C. §1746, I Alex C. Park, declare as follows:

23          1    I am employed as an attorney for the Law Offices of Alex C. Park and represent a

24  number of appeals involving the Sustaire facts.  As such, I have personal knowledge of the

25  following facts and could testify regarding these facts if called to do so.

26          2.    Attached as Exhibit A is a true and correct copy of the Petition for Rehearing En

27  Banc and Stay of Mandate for the matter *Shin v. Mukasay*, ___F.3d___, 2008 W.L. 564982 (9th

28  Cir. March 4, 2008).

1    3.    Attached as Exhibit B is a true and correct copy of the Pro Bono Petition for

2  Rehearing En Banc Filed on Behalf Petitioner and dated April 17, 2008, for the matter *Shin v.*

3  *Mukasay*, ___F.3d___, 2008 W.L. 564982 (9th Cir. March 4, 2008).

4    I declare under penalty of perjury that the foregoing is true and correct and that this

5  declaration was executed under the laws o the United States on his 7th day of March 2008, in San

6  Francisco, California.

7

8

9

Respectfully submitted,

LAW OFFICE OF ALEX C. PARK

10  Dated: April 30, 2008                     _____/s/_____
                                             ALEX C. PARK
11                                           Attorney for Plaintiffs

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**EXHIBIT A**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

RECEIVED
OFFICE OF THE CLERK
U.S. COURT OF APPEALS
9TH CIRCUIT UNIT

2008 MAR 17  AH 9: 31

FILED
DOCKETED
DATE    INITIAL

| | | |
|---|---|---|
| YOUNG SUN SHIN, | ) | Nos. 06-71955 |
| | ) | 06-74052 |
| Petitioner, | ) | |
| | ) | Agency No. A72-976-144 |
| vs. | ) | |
| | ) | |
| MICHAEL B. MUKASEY, Attorney | ) | PETITION FOR |
| General | ) | REHEARING EN BANC |
| | ) | AND STAY OF MANDATE |
| Respondent. | ) | |
| | ) | |

Upon the Issuance of One Order Both Denying Petition for Review of Removal and Denying the Separate and Distinct Petition to Reopen Removal Decision for Readjustment Pursuant to Pending Labor Certification

YOUNG SUN SHIN ("Petitioner") hereby petitions for rehearing en banc of the Order filed March 4, 2008 (the "Order") and seeks a stay of mandate to prevent physical deportation of Petitioner pending rehearing of the Order. The single Order has combined two separate Petitions for Review of the Board of Immigration Appeals ("BIA") decisions, the first issued March 22, 2006 ordering removal of Petitioner; and the second issued August 3, 2006 denying Petitioner's effort to reopen the removal order pursuant to an adjustment of immigration status based on a Labor Certification application.

1

## STATEMENT OF COUNSEL

In the judgment of counsel this petition involves questions of exceptional importance which the Order failed to consider. First the Order failed to recognize that the evidence and argument for estoppel were not fully developed at the immigration court level due to the fact that the immigration judge claimed the court had "no jurisdiction to estopp the government" as requested by Petitioner. Second the Order failed to recognize that Petitioner's motion to reopen the immigration court's removal order was based on new facts that Petitioner's application for Labor Certification was processing for issuance.

## ARGUMENT

**1. The immigration court erroneously failed to recognize the viability of Petitioner's estoppel claim.**

During the immigration hearing on May 20, 2005 the immigration judge stated on the record that the immigration court failed to possess jurisdiction over a claim of estoppel against the United States Government. (*See R:000042*). At other times during the removal hearing the immigration judge discussed, off the record, Petitioner's claims involving estoppel and the court's lack of jurisdiction over such claims. (*See R:000040*). In spite of these claims the Order clearly states that Petitioner was entitled to make a claim of estoppel against the United States

2

Government and the immigration court clearly had jurisdiction to hear and allow

the development of this defensive claim as explained in the Order at page 2033.

## 2. The record is deficient as to Petitioner's full claim of equitable estoppel.

The Order unwaveringly states that none of the elements of estoppel need be

reviewed because Petitioner's record shows that the acts of the government

employee were unauthorized and so failed to reach the level of equitable estoppel.

(*See Order at page 2036*). However, the restrictions implemented by the

immigration judge against developing the theory of estoppel, failed to provide

Petitioner the opportunity to present all of the evidence related to the employee

acts that amount to estoppel concerning Petitioner's immigration application

received and processed by the government. The record fails to address the fact

that the employee deived into the VISA quotas to match Petitioner's application.

The record further fails to discuss that the approved Green Cards, once processed

by government employees pursuant to standing procedures, was mailed out

directly from the government immigration office to Petitioner. The record failed

to investigate the facts that Petitioner went into the government offices to provide

fingerprints, an oath, and payment to the government for the separate fees related

to the same. Petitioner's record also failed to address the fact that the government

stamp was provided for authenticating the Green Card issued to Petitioner by the

3

government.

The Order issued denying Petitioner's appeal based on an analysis that actions by the government employee were "unauthorized acts" by the government is conclusory and not based on a thorough presentation of all of the facts involving the issuance of Petitioner's Green Card who is now claiming a defense of estoppel based on the total of all actions by the government involved in issuing her Green Card.

All of the actions by the immigration judge discouraging Petitioner's efforts to develop the claim of estoppel amounted to limitations to Petitioner's efforts to defend against the removal proceedings brought by the government. The immigration court's efforts to discourage caused Petitioner's failure to present all of the facts involved in her theory for estoppel.

**3. The "bad acts" standard as enforced by the Order fails to provide Petitioner with a viable estoppel defense.**

A claim for estoppel against the United States Government in the context analyzed by the Order leaves Petitioner with a false test if the only valid acts of estoppel will be those actions by employees that are allowed by the government. Under this type of analysis the estoppel claim really masquerades as a claim against the validity of administrative rules and related statutes. A Petitioner

4

should argue the failures of the government policies that the employee is required to follow which leaves estoppel as a shadow claim to only be raised where arguments over policies and procedures can also be raised. Estoppel no longer becomes a claim of equity where, based on the harm to be suffered by Petitioner, a sense of fairness or equity prevents the government from enforcing its actions of removal.

There is no logical reason why the Supreme Court would have provided for an equitable claim of estoppel against the government for the actions of its employees if no action beyond those condoned by the government could be pursued under estoppel. This erroneous logic is further evidenced by the immigration court's analysis that it has no power to estopp the government. The analysis put forth in the Order clearly breaks from an equity claim against the government, by claiming that the actions of its employees only cause equitable estoppel when they reach criminal limits beyond the authorized practices of the office. However here, Petitioner's claim of estoppel against the government, while prevented from being thoroughly presented, actually involved the condoned employee practices to which he was hired to perform for processing immigration applications. The same employee actions to which the Petitioner properly expected to receive from the employee and Petitioner detrimentally relied upon the

5

actions of the government employee.

**4. The Immigration Court's refusal to review estoppel claims leaves no jurisdictional venue other than district court litigation.**

With the immigration judge preventing Petitioner the venue to develop a complete record for an estoppel claim, Petitioner is left with no alternative but to attempt to litigate an estoppel claim in the district court. Numerous other similarly situated plaintiffs have brought claims against the United States Government seeking declaratory relief for estoppel claims available through a related case filed in the United States District Court in Northern California. On October 31, 2007 a class action Complaint for Declaratory Injunctions, Injunctive and Mandamus Relief was filed as Case No. EMC-C-07-5554 by the following plaintiffs: BYUNG HOON CHUNG, individually; DUK BONG CHUNG, individually; MYUNG BIN CHUNG, individually; and KUO CHUL CHUNG, individually; on behalf of themselves and all others similarly situated (the "Complaint"). The Complaint was filed as a class action to provide jurisdiction to allow those in similar factual and legal situations as Petitioner, to develop the factual and legal estoppel claims raised by a class of plaintiffs involved in deportation proceedings caused by former government employee, Leland Sustaire.

The class of plaintiffs provided for in the Complaint include Petitioner who

6

are natives of South Korea that were entangled in a web involving issuance of

immigration papers by the United States Government employee, Leland Sustaire,

that are now claimed to be improper and causing actions for removal. Petitioner

claim in this appeal to oppose the Order confirming removal due to the fact that

the situation is similar to the claims raised in the Complaint for Declaratory

Injunctions, Injunctive and Mandamus Relief was filed as Case No. EMC-C-07-

5554 and such claims should be given the time to be properly litigated as the

immigration court failed to allow.

**5. Petitioner is entitled to reopen proceedings pursuant to Labor**

**Certification.**

The Federal Court has determined that where parties are otherwise eligible

for adjustment of status they are entitled to a continuance of removal proceedings

if an immediate visa is available. *Haswanee v. U.S. Attorney General* _____ F3d

_____ (11th Cir. December 8, 2006). Here Petitioner currently has a pending Form

I-140 application which results in an immediate visa issuance. Petitioner's

application complies with quota requirements. Issuance of the visa will result in a

valid immigration status for Petitioner. To deny the relief of remand will prevent

Petitioner from being entitled to the visa status that will be available to her as a

result of the pending I-140 application. Here Petitioner is statutorily eligible for

7

the I-140 application which will result in an immediate availability of an immigrant status.

**6. Petitioner seeks a stay of mandate during the pending appeal.**

Petitioner requests that the order for deportation be stayed pending the court's decision of this Petition and pending a determination of the Complaint as it involves the same factual and equitable claims refused to be addressed by the immigration judge even though claimed as defense by Petitioner prior to issuance of the order for deportation.

Petitioner should be granted a stay of mandate pending the determination in this review as well as a stay pending the outcome of the related District Court Complaint.

## CONCLUSION

Petitioner respectfully seeks that this court grant the Petition for Review filed pursuant to the errors in the issued Order; grant remand to fully pursue the estoppel claims raised by Petitioner; provide guidance for the immigration court to properly determine the claim for equitable estoppel, and grant a stay of mandate

pending the outcome of the review of this appeal and litigation involving the Complaint.

RESPECTFULLY SUBMITTED this 17th day of March, 2008.

By: _Alex C. Park_

Alex C. Park, Esq.

COPY of the foregoing MAILED
this 17th day of March, 2008 to:

Office of the District Counsel/SFR
P.O. Box 26449
San Francisco, CA 94126-6449

Michael Mukasey, Attorney General
U.S. Department of Justice
930 Pennsylvania Avenue, NW
Washington, DC 20530-00001

## PROOF OF SERVICE

I declare that I am employed in the City and County of Santa Clara; that I

am over the age of eighteen years and not a party to the within action; and that my

business address is 4675 Stevens Creek Boulevard, Suite 100, Santa Clara,

California, 95051.

On the date set forth below, I caused to be served a copy of the following

documents:

1.    PETITION FOR REHEARING EN BANC AND MOTION

FOR STAY OF MANDATE PENDING REVIEW

on the interested parties to said action by the following means:



**(BY MAIL)** By placing a true copy thereof, enclosed in a sealed
envelope with postage thereon fully prepaid, for collection and
mailing on that date following ordinary business practices, in the
United States Mail as the office of Law Offices of Alex C. Park,

10

Santa Clara, California addressed as shown below. I am readily familiar with this business's practice for collection and processing of correspondence for mailing with the U.S. Postal Service the same day it was placed for collection and processing.

_____ **(BY FACSIMILE TRANSMISSION)** I caused such documents to be delivered by facsimile transmission this date to the offices of the addressee(s), to the fax number noted herein.

_____ **(BY HAND DELIVERY)** I caused such envelope(s) to be delivered by hand this date to the date to the offices of the addressee(s).

_____ **(BY OVERNIGHT DELIVERY)** I caused such envelope(s) to be delivered to an overnight delivery carrier with delivery fees provided for, addressed to the person(s) on whom it is to be served.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct; and that this certificate was executed on the date stated above at Santa Clara, California.

Executed on March 17, 2008

_Alex C. Park_
_____

| SERVICE LIST | |
|---|---|
| Office of the District Counsel/SFR<br>P.O. Box 26449<br>San Francisco, CA 94126-6449 | Michael Mukasey, Attorney General<br>U.S. Department of Justice<br>930 Pennsylvania Avenue, NW<br>Washington, DC 20530-00001 |

11

## CERTIFICATE OF COMPLIANCE

## PURSUANT TO CIRCUIT RULE 32-1

Case Nos. 06-71955 and 06-74052

I certify that:

Petitioner's Opening Brief is proportionately spaced, has a typeface of 14

points or more and contains 1858 words.

Executed this 1 7th day of March, 2008.

Alex C. Park
State Bar No. 197781
Attorney for Young Sun Shin

1

**EXHIBIT B**

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

No. 06-71955
<u>PRO BONO</u>

---

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT

---

YOUNG SUN SHIN,
Petitioner,

v.

ALBERTO R. GONZALES, Attorney General of the United States of America,
Respondent,

On Petition for Review from the Board of Immigration Appeals

---

**PRO BONO PETITION FOR REHEARING EN BANC
FILED ON BEHALF OF PETITIONER**

---

William V. Roppolo
*Counsel of Record*
Angela C. Vigil
Jay Soave
Liquita. L. Thompson
Emily P. Harbison
BAKER & McKENZIE LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone:  (305) 789-8900
Facsimile:   (305) 789-8953

AMICUS CURIAE FOR
PETITIONER YOUNG SUN SHIN

April 17, 2008

# TABLE OF CONTENTS

TABLE OF AUTHORITIES..............................................................................ii

STATEMENT OF COUNSEL......................................................................... 1

STATEMENT OF FACTS................................................................................ 2

ARGUMENT AND AUTHORITIES ................................................................ 4

I.   The Panel Interpreted "Unauthorized Acts" Inconsistently with the Ninth Circuit's Equitable Estoppel Doctrine ............................................................ 4

II.  The Panel's Decision Erroneously Abolishes the Ninth Circuit's Equitable Estoppel Doctrine........................................................................................... 8

     A.   The Supreme Court Refuses to Abolish the Equitable Estoppel Doctrine........................................................................................... 9

     B.   The Ninth Circuit Refuses to Abolish the Equitable Estoppel Doctrine........................................................................................... 12

III. Sustaire Engaged in the Authorized Act of Granting and Issuing Green Cards ............................................................................................................ 14

IV.  Even if the Panel's Interpretation of "Unauthorized Acts" Is Correct, Sustaire's Acts Were Authorized Because *He Was the Government*........... 16

CONCLUSION ............................................................................................... 17

CERTIFICATE OF COMPLIANCE ................................................................ 19

CERTIFICATE OF SERVICE......................................................................... 20

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Brandt v. Hickel*, 427 F.2d 53 (9th Cir. 1970) ............................................................. 12

*Durham v. Lockheed Martin Corp.*, 445 F.3d 1247 (9th Cir. 2006)........................ 17

*Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380 (1947) ............................................. 11

*Heckler v. Cmty. Health Servs.*, 467 U.S. 51 (1984)............................................. 9, 11

*INS v. Hibi*, 414 U.S. 5 (1973) ........................................................................... 10, 13

*INS v. Miranda*, 459 U.S. 14 (1982) ........................................................................ 10

*Montana v. Kennedy*, 366 U.S. 308 (1961) .............................................................. 10

*Mukherjee v. INS*, 793 F.2d 1006 (9th Cir. 1986)...................................................... 13

*Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414 (1990)................................... 9

*Salgado-Diaz v. Ashcroft*, 395 F.3d 1158 (9th Cir. 2004) ............................... passim

*Santiago v. INS*, 526 F.2d 488 (9th Cir. 1975)......................................................... 13

*Saulque v. United States*, 663 F.2d 968 (9th Cir. 1981)................................... 5, 7, 15

*Schweiker v. Hansen*, 450 U.S. 785 (1981)............................................................ 9, 10

*St. Regis Paper Co. v. United States*, 368 U.S. 208 (1961) ..................................... 11

*Tennessee v. Davis*, 100 U.S. 257 (1880)................................................................. 17

*Utah Power & Light Co. v. United States*, 243 U.S. 389 (1917).................... 4, 9, 10

*Watkins v. United States Army*, 875 F.2d 699 (9th Cir. 1989).......................... passim

# STATE CASES

*Menges v. Dentler*, 33 Pa. 495 (Pa. 1859)................................................................ 12

*Santos v. Franklin*, 493 F. Supp. 847 (D. Pa. 1980) .................................................. 8

## STATEMENT OF COUNSEL

Petitioner Yung Sun Shin petitions the Court for en banc review. In undersigned counsel's judgment, en banc rehearing is necessary to maintain uniformity of this Court's decisions. The panel below summarily found that it could not estop the United States Department of Homeland Security and the Department of Justice (together referred to as "the Government") from deporting Shin, who for almost fifteen years has successfully integrated into San Jose, because the Government did not authorize its high-level government agent to commit affirmative misconduct. This literal interpretation of the term "unauthorized acts," as used in the context of the equitable estoppel doctrine as against the government, is wholly inconsistent with Ninth Circuit immigration precedent. In analyzing the term "unauthorized acts," the Ninth Circuit uniformly has focused on whether the government authorized the agent to perform a specific job duty, rather than whether the government authorized him to perform the duty illegally. This makes sense, given that in order to apply the equitable estoppel doctrine, a petitioner must prove that the agent engaged in affirmative misconduct. Anytime the government authorizes an agent's actions, the agent cannot be engaging in affirmative misconduct. Therefore, the panel's opinion effectively holds that this Circuit no longer recognizes the equitable estoppel doctrine as against the government in immigration cases. Nothing in this Court's or the

Supreme Court's precedent supports the panel's wholesale evisceration of the equitable estoppel doctrine. Therefore, en banc consideration is necessary to maintain uniformity of this Court's equitable estoppel decisions in immigration cases.

## STATEMENT OF FACTS

Young Sun Shin was the unwitting victim of affirmative misconduct by a high-ranking government official. Shin lawfully entered the United States in June 1993 on a six-month tourist visa. (R:30-31.) After her visa expired, she retained a consultant who said he could help her obtain a lawful resident alien card (a "green card"). (R:32, 605.) The consultant said he worked with skilled attorneys and business professionals who could help her get a green card. (*Id.*) In addition to paying the required "attorney's fees and processing fees," Shin submitted all the documentation the consultant requested, including valid fingerprint cards and a valid birth certificate. (R:604.) She even obtained a medical examination in support of obtaining a valid green card. (*Id.*) Thereafter, Shin received what she genuinely believed to be a valid green card. (R:39, 649.)

Almost ten years later, she received a Notice to Appear charging her removable to South Korea. (R:30, 32.) Shin learned that although she held an authentic green card, a government agent had issued her the green card as part of a criminal conspiracy lead by Leland Sustaire, the Supervisory District Adjudication

Officer of the Immigration and Naturalization Service ("INS") San Jose office. Sustaire, in his supervisory capacity, not only had the authority to process all immigration applications submitted to the San Jose office, but he also had the authority to grant permanent residency without authorization from anyone else in the office. (R:17, 64-65, 175.)  Unbeknownst to his victims, Sustaire took bribes from his co-conspirators and issued authentic green cards but without following all the legal procedures necessary prior to issuing a valid green card.  (R:39, 64-65, 649.)

Although Sustaire pled guilty to criminal conspiracy, he served no prison time for his misconduct, he paid no restitution to his victims, and he kept all the proceeds he took from his unwitting victims and all the profits derived from his illegal activities. (R:206, 209, 555, 558.)

Shin did not fare as well.  The Government seeks to remove her from the United States even though she has lived as a successful member of the San Jose community for almost fifteen years, and even though Sustaire's actions deprived her of the opportunity to attempt to obtain a valid green card.

Before the panel, Shin argued that the Government should be equitably estopped from removing her.  The panel summarily dismissed her argument, finding that the government could not be estopped based on "unauthorized acts" of its agent.  For the reasons set forth herein, the panel's opinion misinterprets the

term "unauthorized acts," and disturbs the uniformity of this Court's opinions. En banc rehearing is therefore necessary.

## ARGUMENT & AUTHORITIES

### I.    The Panel Interpreted "Unauthorized Acts" Inconsistently with the Ninth Circuit's Equitable Estoppel Doctrine.

The panel's decision eviscerates the uniformity of this circuit's equitable estoppel doctrine.[1]  The panel never reached the elements of equitable estoppel against the Government.[2]  Instead, the panel found that Shin failed to satisfy a threshold requirement of showing that the Government authorized Sustaire's actions, citing case law for the proposition that "the government is not bound by the *unauthorized* acts of its agents."  PD at 2036 (citing *Watkins v. United States Army*, 875 F.2d 699 (9th Cir. 1989); *Utah Power & Light Co. v. United States*, 243 U.S. 389 (1917)).

---

[1]  The panel decision, attached as Exhibit A, is cited to herein as "(PD at [page number])."

[2]  The traditional elements of equitable estoppel are (1) the party to be estopped knows the facts; (2) the party intends that his or her conduct will be acted on; (3) the claimant must be ignorant of the true facts; (4) and the claimant must detrimentally rely on the other party's conduct.  *Salgado-Diaz v. Ashcroft*, 395 F.3d 1158, 1166 (9th Cir. 2004).  To estop the government, petitioner must establish two additional requirements:  (1) affirmative misconduct going beyond mere negligence; and (2) the potential injustice to the individual outweighs the possibility of damage to the public interest.  *Id.* at 1165-66; *Watkins v. United States Army*, 875 F.2d 699, 707 (9th Cir. 1989).  Petitioner analyzed these elements in the panel brief, and therefore does not set them forth in this brief.

In doing so, the panel interpreted "unauthorized acts" inconsistently with the Ninth Circuit's equitable estoppel doctrine line of cases. "Unauthorized acts" in estoppel cases is a legal term of art that has nothing to do with whether the government authorized an agent's affirmative misconduct. Ninth Circuit cases uniformly reflect that in analyzing whether a government agent commits "unauthorized acts," the court's focus is not on the illegality of the agent's actions (as the panel did in this case), but rather on the type of tasks within the scope of the agent's job duties. That is, if an agent has authority to perform a specific job function, then his actions are authorized as long as he is performing that job function, even if he is performing it illegally.

This Court's *Saulque* decision illustrates this point. *See Saulque v. United States*, 663 F.2d 968, 975-76 (9th Cir. 1981). In *Saulque*, the Court found that a Department of Interior employee committed an unauthorized act by sending a letter unlawfully withdrawing lands from the public domain. *Id.* at 974. The court found his actions unauthorized, not because the government could not lawfully withdraw the lands, but because he was a low-level government employee who under no circumstances had authority to withdraw lands. *Id.* It simply was not one of his job duties. *Id.*

*Watkins*, the case on which the panel relied, also illustrates that in interpreting "unauthorized acts" the court should focus on the duties assigned to

the agent rather than the unlawful manner in which the agent performs the duty. *Watkins v. United States Army*, 875 F.2d 699 (9th Cir. 1989). In *Watkins*, the Court estopped the government from denying a sergeant's re-enlistment because an Army official told him he could re-enlist even though he was homosexual. *Id.* at 711. The Court found his actions were not unauthorized even though the official "affirmatively acted in violation of [Army] regulations," because approving re-enlistment was "well within their scope of authority." *Id.* at 708. Clarifying, the Court stated, "Without Army approval [Watkins] would not have been able to enter, remain or progress in the Army. . . . [R]eenlistment is exclusively the Secretary's function, [sic] Here he exercised his authority three times." *Id.* Despite the Army official affirmatively violating its own regulations (without specific authorization), this Court found that the Army's actions were not unauthorized.

This Court's recent opinion in *Salgado-Diaz* is also instructive. *See Salgado-Diaz v. Ashcroft*, 395 F.3d 1158 (9th Cir. 2004). Although it does not specifically address the "unauthorized acts" threshold, it demonstrates that the court applies estoppel when an agent performs a job task the government authorized him to do. There, border patrol agents allegedly "violated the [U.S.] Constitution by detaining [an immigrant] based on his Hispanic appearance," improperly tricked him into signing voluntary departure papers, and then

6

physically took him back to Mexico. *Id.* at 1165-67. The Court analyzed each element of the equitable estoppel doctrine and found Salgado-Diaz met these elements, and that if he could prove that the border patrol agents committed the unlawful acts as alleged, then the equitable estoppel doctrine should apply. *Id.* at 1166.

Implicitly, the Court had to find that the border patrol agents did not commit "unauthorized acts." Otherwise, the Court would not have gone past this threshold element and analyzed the remaining equitable estoppel elements. Indeed, the Court had no need to address the "unauthorized acts" threshold because the government gave the border patrol agents authority to detain illegal immigrants, obtain voluntary departure forms, and deport immigrants. Whether the agents' acts were "unauthorized acts" had nothing to do with the unlawfulness or unconstitutionality of them detaining and deporting the immigrant. Instead, it had everything to do with the job functions the government authorized.

This line of case shows that "unauthorized acts," for purposes of the equitable estoppel doctrine, is a term of art that is not defined by the legality or illegality of an agent's actions; rather it is defined by whether the government authorized the agent to perform a given duty as part of his job. *Watkins*, 875 F.2d at 708; *Saulque*, 663 F.2d at 975-76; *Salgado-Diaz*, 395 F.3d at 1166. The panel, in requiring Shin to show that the Government authorized the illegality of

Sustaire's actions, rather than to show that the Government authorized Sustaire to issue green cards, conflicts with this Court's opinions. Thus, en banc review is necessary to secure uniformity between its decisions.

## II.    The Panel's Decision Erroneously Abolishes the Ninth Circuit's Equitable Estoppel Doctrine.

The panel's interpretation of "unauthorized acts" effectively abolishes the equitable estoppel doctrine in the Ninth Circuit. Assuming *arguendo* that the "unauthorized acts" threshold requires the government to literally authorize the agent to take illegal or fraudulent actions (rather than authorize the job duty), and given that estoppel requires a showing of "affirmative misconduct going beyond mere negligence," then it is difficult, if not impossible, to imagine a situation where the equitable estoppel doctrine applies against the government. As explained by one district court,

> [I]f the actual authority requirement is taken literally, then the restriction . . . that estoppel requires "affirmative misconduct" by a government agent is nonsense, or close to it: unconstitutional conduct aside, an act authorized by law can seldom if ever be termed affirmative misconduct.

*Santos v. Franklin*, 493 F. Supp. 847, 855 (D. Pa. 1980). Following the reasoning of the panel, the government could never be estopped, and the panel effectively has adopted a per se ban on the equitable estoppel doctrine as against the government. Neither the Supreme Court nor this Circuit have adopted such a wholesale abandonment of the equitable estoppel doctrine.

8

### A.    The Supreme Court Refuses to Abolish the Equitable Estoppel Doctrine.

The panel's abandonment of the equitable estoppel doctrine is not supported by Supreme Court precedent.  In no less than three government estoppel cases, the Supreme Court has held that equitable estoppel remains a viable claim against the government under the right circumstances.  *See Office of Personnel Mgmt. v. Richmond*, 496 U.S. 414, 423 (1990) (finding that "we need not embrace a rule that no estoppel will lie against the government in any case in order to decide this case"); *Heckler v. Cmty. Health Servs.*, 467 U.S. 51, 60-61 (1984) (finding that "we are hesitant . . . to say that there are no cases" where the government might be estopped); *Schweiker v. Hansen*, 450 U.S. 785, 788 (1981) (per curiam) (observing that the Supreme Court "has never decided what type of conduct by a government employee will estop the government from insisting upon compliance with valid regulation").

In *Richmond*, the Supreme Court rejected the Solicitor General's request to adopt "a flat rule that estoppel may not in any circumstances run against the government." *Richmond*, 496 U.S. at 423.  In doing so, the Court explained the history of the equitable estoppel doctrine and detailed the lineage of cases in which the Supreme Court declined to adopt a per se ban on the equitable estoppel doctrine against the government. *Id.* at 421-22.  The Court noted that in its more recent cases it has begun to retreat from its earlier position, set forth in *Utah Power*

*& Light Co. v. United States*, 243 U.S. 389 (1917), that the government cannot be estopped by acts of its agents in entering into agreements to do what the law does not permit. *Id.* The Supreme Court explained that "dicta in our more recent cases have suggested the possibility that there might be some situation in which estoppel against the government could be appropriate." *Id.* at 421. The Court went on to explain the erosion of the breadth of *Utah's* reach, noting that in *Montana* it rejected a consular official's argument that the government could deprive a child of citizenship when a government agent prevented him from being born in the United States by telling his mother she could not enter the United States while pregnant. *Id.* (citing *Montana v. Kennedy*, 366 U.S. 308, 314-15 (1961)).

Since *Montana* the Supreme Court has rejected several estoppel arguments, but it continues to acknowledge the possibility that some types of affirmative misconduct might give rise to estoppel against the government. *See INS v. Hibi*, 414 U.S. 5, 8 (1973) (per curiam) (finding that "[w]hile the issue of whether 'affirmative misconduct' on the part of the government might estop it from denying citizenship was left open . . . no conduct of the sort there adverted to was involved here"); *Schweiker*, 450 U.S. at 788 (per curiam) (denying estoppel claim for Social Security benefits, but observing the Court "has never decided what type of conduct by a Government employee will estop the government"); *INS v. Miranda*, 459 U.S. 14, 19 (1982) (per curiam) (concluding that "[t]his case does

not require us to reach the question . . . whether affirmative misconduct in a particular case would estop the government from enforcing the immigration laws."); *Heckler*, 467 U.S. at 60 ("We have left the issue open in the past, and do so again today.").

For example, in *Heckler,* the Supreme Court confronted the issue of whether a medical provider, who relied on the erroneous advice of a government agent, would have to repay the government. *Heckler*, 467 U.S. at 53-57. Rejecting the government's argument that it cannot be estopped as a result of the misdeeds of its agents, the Court stated:

> Though the arguments the government advances for the rule are substantial, we are hesitant, when it is unnecessary to decide in this case, to say that there are no cases in which the public interest in ensuring that the government can enforce the law free from estoppel might be outweighed by the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government.

*Id.* at 60 (citing *St. Regis Paper Co. v. United States,* 368 U.S. 208, 229 (1961) (Black, J., *dissenting*) ("Our Government should not by picayunish haggling over the scope of its promise, permit one of its arms to do that which, by any fair construction, the government has given its word that no arm will do. It is no less good morals and good law that the government should turn square corners in dealing with the people than that the people should turn square corners in dealing with their government"); *Fed. Crop Ins. Corp. v. Merrill*, 332 U.S. 380, 387-88

(1947) (Jackson, J., *dissenting*) ("It is very well to say that those who deal with the government should turn square corners. But there is no reason why the square corners should constitute a one-way street"); *Brandt v. Hickel*, 427 F.2d 53, 57 (9th Cir. 1970) ("To say to these appellants, 'The joke is on you. You shouldn't have trusted us,' is hardly worthy of our great government."); *Menges v. Dentler*, 33 Pa. 495, 500 (Pa. 1859) ("Men naturally trust in their government, and ought to do so, and they ought not to suffer for it.")).

Thus, in cases such as this one, where "the countervailing interest of citizens in some minimum standard of decency, honor, and reliability in their dealings with their Government" substantially outweighs the interest of the government enforcing the law free from estoppel, the Supreme Court has rejected a per se ban on applying the equitable estoppel doctrine against the government, and specifically acknowledges that there might be some situations in which estoppel against the government is appropriate. This case squarely presents that situation.

## B. The Ninth Circuit Refuses to Abolish the Equitable Estoppel Doctrine.

Following the Supreme Court's guidance, the Ninth Circuit likewise has refused to accept a per se ban on equitable estoppel against the government. Indeed, as recently as three years ago, this Circuit not only left open the possibility, but actually found that the government should be equitably estopped in an

immigration case involving government misconduct similar to, but not nearly as egregious as, Sustaire's conduct in this case.

In *Salgado-Diaz*, discussed *supra*, the Court found not only that the "government in immigration cases may be subject to equitable estoppel," but also that "the government should be estopped" if the petitioner could prove the government agent's misconduct. *Salgado-Diaz*, 395 F.3d at 1165-1166.

*Salgado-Diaz* does not stand alone in the Ninth Circuit. Indeed, *Salgado-Diaz* relied on a long line of Ninth Circuit precedent which uniformly embraced, rather than abandoned, the equitable estoppel doctrine in immigration cases. *See id.* at 1165-66 (citing *Mukherjee v. INS*, 793 F.2d 1006, 1008-09 (9th Cir. 1986) (outlining elements of equitable estoppel claim against the government); *Santiago v. INS*, 526 F.2d 488, 492 (9th Cir. 1975) (en banc) (holding in the immigration context that the court continues "to believe that estoppel is available in such cases where the particular facts warrant it") (citing *Hibi*, 414 U.S. at 8).

Notably, in none of these Ninth Circuit immigration cases did the court discuss the so-called "unauthorized acts" threshold. It did not have to. In each of those cases the INS or border patrol agents performed job duties the government authorized them to perform and therefore they did not engage in unauthorized acts—even though their actions were unlawful. *See, e.g., Salgado-Diaz*, 395 F.3d at 1160 (border patrol agent detaining immigrant and deporting him back to

13

Mexico); *Watkins*, 875 F.2d at 708 (Army agent granting re-enlistment). Otherwise, the Court would have had to find that the government specifically and literally authorized the unlawfully actions committed in each of those cases, yet the agents still engaged in affirmative misconduct—which cannot be the case.

## III.  Sustaire Engaged in the Authorized Act of Granting and Issuing Green Cards.

Given that both the Ninth Circuit and the Supreme Court have not abandoned the equitable estoppel doctrine as against the government in immigration cases, it is only logical that "unauthorized acts" must mean something more than the government specifically authorizing an agent to perform an illegal act or other acts of misconduct.  As set forth above, case law shows that it requires a showing that the government authorized the agent to perform a particular job function (putting aside whether he performed it illegally).

Based on the interpretation uniformly applied in every other Ninth Circuit immigration case, Sustaire's actions were government authorized.  While one could argue that representations made by an INS employee who has no authority to issue green cards under any circumstances cannot have any binding effect on the INS, Sustaire was not a mere low-level drone. [3]  As admitted by the Government in

---

[3] For example, if a janitor working at the INS office issued Shin's green card, the government would not be bound by the janitor's unauthorized acts because the janitor was never authorized to perform such an act.  However, Sustaire did have

its panel brief, "Sustaire explained that in his role as a Supervisory District Adjudication Officer, he had the authority to approve and deny applications for immigration benefits without authorization from others in his office, and that he was in charge of all the applications processed at the INS's San Jose, California office. A.R. 64-65." This stands in stark contrast to the low-level government agent in *Saulque*, who under no circumstances had the authority to withdraw lands. Sustaire was the Supervisory District Adjudication Officer—a high-level official. He not only had authority to issue green cards, he could issue them without authorization from anyone else. He was not a drone, he was the queen bee.

Sustaire's actions were more akin to, yet more egregious than, the conduct this Court implicitly found constituted authorized acts, such as the border patrol agent in *Salgado-Diaz* who had authority to detain and deport, or the Army agent in *Watkins* who had authority to grant re-enlistments. All of these government agents acted "well within their scope authority" and were engaged in authorized acts of the government despite the unlawful way in which they performed the function. As in those cases, it was well within the scope of Sustaire's authority to process and issue green cards without any authorization from anyone else. The fact that he did so illegally has no bearing on whether he committed "unauthorized

---

governmental authority to issue green cards, and the Government should be estopped by his actions related to issuing green cards.

acts." In finding otherwise, the panel strayed from the this Court's uniform interpretation of the term, "unauthorized acts."

However, the fact that Sustaire's actions were illegal does directly bear on and proves that Sustaire committed the exact type of "affirmative misconduct" that warranted application of estoppel against the government in *Salgado-Diaz* and *Watkins*. Only here, the facts are much more egregious. While the government agents made misrepresentations in *Salgado-Diaz* and *Watkins*, Sustaire defrauded Shin and committed illegal acts. Unlike Salgado-Diaz who entered the country "without inspection," Shin entered legally and tried to become a legal permanent resident alien. And unlike Watkins, who would have only been excluded from the Army, the Government seeks to exclude Shin from living in the United States altogether, even though she has lived here over fifteen years in reliance on a green card, which in her naïveté she thought was valid because she received it from a high-level government agent who had the express authority to grant and issue green cards. This case, if any, meets the standard for affirmative misconduct warranting estoppel against the government.

## IV. Even if the Panel's Interpretation of "Unauthorized Acts" Is Correct, Sustaire's Acts Were Authorized Because *He Was the Government*.

Even assuming *arguendo* that the panel correctly interpreted "unauthorized acts" to require actual authority to commit the illegal act, Shin still meets this threshold because Sustaire was the Government. It is well established that the

government "can only act through its officers and agents." *Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1253 (9th Cir. 2006) (citing *Tennessee v. Davis*, 100 U.S. 257, 263 (1880)). Sustaire was a high-ranking official of the government, serving as a Supervisory District Adjudication Officer in the INS. He had supervisory and independent authority to issue green cards on behalf of the government without any further authorization. Therefore, *he was the Government*. Accordingly, the Government expressly authorized his actions, and the court should apply the equitable estoppel doctrine and estop the Government from removing Shin.

## CONCLUSION

Under the panel decision, the equitable estoppel doctrine as against the government effectively no longer exists. If the government must authorize acts of affirmative misconduct, as the panel opinion provides, then a government official's actions can never be affirmative misconduct because they were authorized in the first place. It is therefore impossible that a scenario exists where the government could be estopped under the panel's interpretation. Neither this Circuit nor the Supreme Court have interpreted unauthorized acts in such a manner as to per se preclude claims of equitable estoppel against the government, especially in immigration cases where people's lives are at stake. Accordingly, en banc rehearing is necessary to preserve the uniformity of this Court's precedent.

Dated: April 17, 2008

Respectfully submitted,

William V. Roppolo
*Counsel of Record*
Angela C. Vigil
Jay Soave
Liquita. L. Thompson
Emily P. Harbison
BAKER & McKENZIE LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone:   (305) 789-8900
Facsimile:   (305) 789-8953

AMICUS CURIAE FOR
PETITIONER YOUNG SUN SHIN

# CERTIFICATE OF COMPLIANCE

I certify that pursuant to Circuit Rule 40-1, the attached petition for rehearing en banc is proportionately spaced, has a typeface of 14 points, and contains 4,071 words, excluding parts exempt by Fed. R. App. P. 32(a)(7)(B)(iii).

Dated: April 17, 2008

Respectfully submitted,

William V. Roppolo
*Counsel of Record*
Angela C. Vigil
Jay Soave
Liquita. L. Thompson
Emily P. Harbison
BAKER & McKENZIE LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone:  (305) 789-8900
Facsimile:  (305) 789-8953

AMICUS CURIAE FOR
PETITIONER YOUNG SUN SHIN

## CERTIFICATE OF SERVICE

I certify that on April 17, 2008, I served  copies of the foregoing petition for rehearing en banc via Federal Express Overnight Service to the following counsel of record, addressed as follows:

Alex C. Park, Esq.
4675 Stevens Creek Blvd., Suite 100
Santa Clara, CA 95051

Sarah Maloney
Office of Immigration Litigation
U.S. Department of Justice
Civil Litigation
930 Pennsylvania Avenue, NW
Washington, DC 20530

I further certify that on April 17, 2008, I forwarded an original and fifty (50) copies of the foregoing petition for rehearing en banc upon the Ninth Circuit Court of Appeals via Federal Express Overnight Service.

Respectfully submitted,

William V. Roppolo
*Counsel of Record*
Angela C. Vigil
Jay Soave
Liquita. L. Thompson
Emily P. Harbison
BAKER & McKENZIE LLP
Mellon Financial Center
1111 Brickell Avenue, Suite 1700
Miami, Florida 33131
Telephone:  (305) 789-8900
Facsimile:  (305) 789-8953

AMICUS CURIAE FOR
PETITIONER YOUNG SUN SHIN

A

### FOR PUBLICATION

## UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| YOUNG SUN SHIN,<br><br>      *Petitioner,*<br><br>v.<br><br>MICHAEL B. MUKASEY, Attorney<br>General,<br><br>      *Respondent.* | Nos. 06-71955<br>   06-74052<br><br>Agency No.<br>A72-976-144<br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted
December 7, 2007—San Francisco, California

Filed March 4, 2008

Before: Dorothy W. Nelson and Carlos T. Bea,
Circuit Judges, and Louis F. Oberdorfer,* Senior District
Judge.

Opinion by Judge Bea

---

*The Honorable Louis F. Oberdorfer, Senior United States District
Judge for the District of Columbia, sitting by designation.

SHIN v. MUKASEY

## SUMMARY

### Immigration/Removal and Asylum

The court of appeals denied a petition for review. The court held that the threshold requirement for applying equitable estoppel against the government in a removal proceeding was not satisfied: the acts of an immigration employee who took bribes and engaged in fraud, crimes for which he was convicted, were indisputably unauthorized.

Petitioner Young Shin, a South Korean national, overstayed her tourist visa and paid $10,000 to buy a fraudulent green card manufactured by Leland Sustaire, a corrupt federal immigration employee. Shin came to the attention of the government when, as part of a plea bargain, Sustaire's attorney turned over a list of "A" numbers that identified aliens, including Shin, who had obtained unlawful status changes. Shin was charged with removability for being an alien lacking possession of valid documents for admission. At her hearing, in exchange for the government's agreement to drop an additional fraud charge pending against her, Shin conceded she did not possess valid immigration documents, but denied the charge that she had remained in the United States longer than permitted. However, Shin did not apply for any form of relief from removal. The immigration judge (IJ) sustained both charges of removability and ordered Shin removed to South Korea. The IJ declined to address Shin's argument that the government had "unclean hands" in the removal proceeding because of Sustaire's misconduct and, therefore, should be estopped from removing her. On appeal, the Board of Immigration Appeals (BIA) summarily affirmed the IJ's decision. The BIA denied Shin's motion to reopen to file an application to adjust her status, as she failed to attach an approved I-140 Form.

Shin petitioned for review.

SHIN v. MUKASEY

2029

[1] The evidence proved that the only lawful basis for Shin's presence in the United States was her visitor's visa, which allowed her to stay for only six months and expired in December 1993. Hence, substantial evidence supported the IJ's ruling that Shin was removable for having remained in the United States longer than allowed by her valid immigration documents. [2] Shin expressly conceded removability. Additionally, Shin did not apply for any form of relief from removability. On the basis of Shin's concession, the government's burden was satisfied.

[3] The IJ did not violate Shin's due process rights by admitting Sustaire's deposition testimony in her removal proceedings. [4] In order to successfully attack by judicial proceedings the conclusions and orders made upon such removal hearings it must be shown that the proceedings were manifestly unfair and that the actions of the IJ were such as to prevent a fair investigation. Shin's proceeding was not so fundamentally unfair that she was prevented from reasonably presenting her case. Shin was given an individual hearing before an IJ where any defenses or claims for relief were heard. There was no procedural defect amounting to a due process violation.

[5] The government is not bound by the unauthorized acts of its agents. [6] Sustaire was a government employee who took bribes and engaged in fraud, crimes for which he was convicted. There was no dispute that Sustaire's acts were unauthorized. Thus, the threshold requirement for applying equitable estoppel against the government was not satisfied.

[7] A motion to reopen must, among other things, state the new facts to be considered at the reopened hearing and be supported by affidavits demonstrating *prima facie* eligibility for the relief sought. Aliens who seek to remand or reopen proceedings to pursue relief bear a heavy burden of proof. Shin did not meet this burden because she failed to cure the defects that led to her motion to reopen being denied in the

2030    SHIN v. MUKASEY

first place. [8] Shin was barred from filing a second motion to reopen. Shin's petition had to be denied.

## COUNSEL

Alex Park, Santa Clara, California, for the petitioner.

William Roppolo, Liquita Thompson, Celina Joachim, Jordan Faykus, Kendra Massumi, Baker & McKenzie LPP, Miami, Florida, Pro Bono Amicus Curiae for the petitioner.

Peter Keisler, James Grimes, Sarah Maloney, United States Department of Justice, Washington, D.C., for the respondent.

## OPINION

BEA, Circuit Judge:

We consider today whether an alien who overstayed her tourist visa, and then paid $10,000 for the purchase of a fraudulent alien registration card (known as a "green card") manufactured by a corrupt federal immigration employee, can bar the government from removing her from this country on the grounds the government is estopped to assert the green card is bogus. Unsurprisingly, we hold the government cannot be saddled with the felonious, unauthorized issuance of residency documentation by a thieving employee.

Young Sun Shin petitions for review from a final order of removal from the Board of Immigration Appeals ("BIA") and from the BIA's denial of her motion to reopen. Petitioner also seeks a remand of her motion to reopen. Petitioner claims the government failed to meet its burden of showing she was removable. As a fallback, she claims that, because government employee Leland Sustaire engaged in affirmative

SHIN v. MUKASEY    2031

misconduct, the government should be estopped from removing her. Petitioner expressly conceded removability. She did not apply for any form of relief from removability. Her due process violation claims are without merit. Hence, we deny her petition for review of the removal order.

Petitioner also seeks reconsideration of the BIA's denial of her motion to reopen and she seeks a remand to file a second motion to reopen to adjust her status. The BIA denied her motion to reopen because petitioner failed to attach the necessary documentation showing she was entitled to adjust her status. Because petitioner does not now demonstrate she would be entitled to adjust her status on remand, nor that the BIA's denial of her motion to reopen was error, her petition for review from the denial of her motion to reopen and her motion to remand are also denied.

I.

Petitioner, a native and citizen of the Republic of Korea ("South Korea"), originally entered the United States in June of 1993 on a tourist visa that allowed her to remain for six months. In October of 1994, petitioner received an alien registration card (a "green card") which adjusted her status to a lawful permanent resident. The card allowed her to stay in the United States as the spouse of a skilled worker or professional holding a baccalaureate degree. At the time, petitioner had no husband; she had been divorced for three years. What is more, her former husband, who had never been to the United States, held only a high school diploma.

Petitioner obtained her permanent resident status through Kyun Min Lee ("Lee"), a runner for Leland Sustaire, who was using his government position to sell fraudulent green cards. For a complete background on Sustaire and the conspiracy, see this court's opinion in Hong v. Mukasey, No. 06-72823.

Petitioner paid Lee $10,000 to obtain her green card. She never went to an Immigration and Naturalization Office

("INS") office, nor was she interviewed by an INS agent. Petitioner claims she was unaware of the fraud until she saw an article about Lee's indictment in 2000.

Sustaine had compiled a list of "A" numbers that identified aliens who had obtained unlawful changes in their status as a result of his fraudulent scheme. Petitioner's number appeared on this list. Petitioner came to the attention of the INS when, as part of a plea bargain, Sustaine's attorney delivered the list to the Department of Homeland Security's ("DHS") Office of the Inspector General. Petitioner was charged with removability for being an alien not in possession of valid documents for admission under Immigration and Nationality Act ("INA") § 237(a)(1)(A), *codified at* 8 U.S.C. § 1227(a)(1)(A), and for remaining in the United States for a time longer than permitted under INA § 237(a)(1)(B), *codified at* 8 U.S.C. § 1227(a)(1)(B).

At the hearing, in exchange for the government's agreement to drop an additional fraud charge pending against petitioner, petitioner conceded she did not possess valid immigration documents. Petitioner denied the charge that she had remained in the United States longer than permitted. However, she did not apply for any form of relief from removal.

The Immigration Judge ("IJ") sustained both charges of removability and ordered petitioner removed to South Korea. The IJ declined to address petitioner's argument that the government had "unclean hands" in the removal proceeding because of Sustaine's misconduct and, therefore, should be estopped from removing her.

On appeal, the BIA adopted and summarily affirmed the IJ's decision. Petitioner then filed a motion to reopen to file an application to adjust her status. In support of her motion to reopen, petitioner submitted a copy of her application and documentation of an approved labor certification. However,

she failed to attach an approved I-140 Form (a petition to adjust her status to an alien worker) or other pertinent documentation, as required by 8 C.F.R. § 1003.2(c). Accordingly, the BIA denied her motion to reopen.

II.

When the BIA adopts the decision of the IJ, we "review the IJ's decision as if it were that of the BIA." *Abebe v. Gonzales,* 432 F.3d 1037, 1039 (9th Cir. 2005) (en banc).

We review "the IJ's findings of fact for substantial evidence and will uphold these findings if they are supported by reasonable, substantial, and probative evidence on the record considered as a whole." *Id.* at 1039-40 (quotation marks and citation omitted). We review questions of law, including due process challenges, *de novo. Ramirez-Alejandre v. Ashcroft,* 319 F.3d 365, 377 (9th Cir. 2003).

We have jurisdiction to review the BIA's final order of removal against petitioner. 8 U.S.C. § 1252.

Petitioner argues the government should be estopped from removing her due to Sustaine's actions. Under 8 U.S.C. § 1252(g), we have no "jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders . . . ." *See also Reno v. American-Arab Anti-Discrimination Comm.,* 525 U.S. 471, 482 (1999). However, we have jurisdiction over petitioner's equitable estoppel claim because it arises from actions taken by a corrupt government employee prior to any decision made by the Attorney General to commence proceedings against her. *See Wong v. United States,* 373 F.3d 952, 965 (9th Cir. 2004) (holding that "§ 1252(g) does not bar review of actions that occurred *prior to* any decision to 'commence proceedings' ").

2034                                    SHIN v. MUKASEY

### III.

[1] Substantial evidence supports the IJ's finding petitioner remained in the United States longer than permitted. Petitioner was admitted to the United States as a visitor for six months in 1993 and later obtained an invalid resident alien card as part of Sustaire's criminal, fraudulent scheme. On the basis of this documentary evidence and also considering Sustaire's testimony before the court, the IJ found "there is no doubt . . . [Shin] is not and has never been in possession of a valid resident alien card." The evidence proves the only lawful basis for petitioner's presence in the United States was her visitor's visa which allowed her to stay for only six months and expired in December of 1993. Hence, substantial evidence supports the IJ's ruling petitioner was removable for having remained in the United States longer than allowed by her valid immigration documents.

### IV.

[2] Petitioner argues the government failed to meet its burden of showing she was removable under INA § 237(a)(1)(A). "The government has the initial burden of establishing the alien's deportability by clear and convincing evidence." Estrada v. INS, 775 F.2d 1018, 1020 (9th Cir. 1985). However, where the alien concedes removability, "the government's burden in this regard is satisfied." Id. At the hearing before the IJ, petitioner's counsel expressly conceded removability on the ground she was not in possession of valid documents for admission. Additionally, petitioner did not apply for any form of relief from removability. On the basis of petitioner's concession, the government's burden is satisfied and petitioner's claim is without merit. Id.

[3] The transcript of Sustaire's confessional deposition, Sustaire's list of the A Numbers of aliens to whom he fraudulently gave green cards, and the records of criminal convictions in Sustaire's and Lee's cases, were all admitted at

SHIN v. MUKASEY                                    2035

petitioner's hearing. In the interest of judicial economy, the IJ arranged for Sustaire to be deposed on two different dates, first by attorney Alex Park, who represented petitioner and over 100 other aliens, and then by the attorneys representing the remaining aliens. Petitioner, through counsel, objected to the use of Sustaire's consolidated testimony and now alleges the IJ violated her due process rights by admitting Sustaire's deposition testimony in her removal proceedings. We disagree.

[4] "In order to successfully attack by judicial proceedings the conclusions and orders made upon such [removal] hearings it must be shown that the proceedings were manifestly unfair" and that the actions of the IJ were such as to prevent a fair investigation. Low Wah Suey v. Backus, 225 U.S. 460, 468 (1912). Petitioner's proceeding was not so fundamentally unfair that she was prevented from reasonably presenting her case. Petitioner's counsel participated in Sustaire's deposition and was allowed to cross-examine him. Petitioner also had the benefit of hearing and comparing Sustaire's responses to other attorneys' questions. Additionally, during each alien's hearing, Sustaire was made available if additional testimony was needed. Most importantly, petitioner was given an individual hearing before an IJ where any defenses or claims for relief were heard. Because we find no procedural defect amounting to a due process violation in this procedure, petitioner's due process claim fails.

### V.

[5] Petitioner contends the government should be equitably estopped from removing her. At the heart of her estoppel argument is the claim she was unaware "of the bribery and fraud committed by Sustaire," and she "relied on the issuance of the immigration papers and lived a productive life in the United States at the cost of . . . [pursuing] a life in South Korea."

Estoppel requires the following:

(1) the Party to be estopped must know the facts; (2) he must intend that this conduct shall be acted on or must so act that the party asserting the estoppel has a right to believe it is so intended; (3) the latter must be ignorant of the true facts; and (4) he must rely on the former's conduct to his injury.

*Watkins v. United States Army*, 875 F.2d 699, 709 (9th Cir. 1989) (en banc) (quotation marks and citation omitted). Here, we need not reach any of the elements of estoppel because "it is well settled that the government is not bound by the *unauthorized* acts of its agents." *Id.* at 707; *see also Utah Power & Light Co. v. United States*, 243 U.S. 389, 409 (1917) ("[T]he United States is neither bound nor estopped by acts of its officers or agents in entering into an arrangement or agreement to do or cause to be done what the law does not sanction or permit.").

[6] Sustaire was a government employee who took bribes and engaged in fraud, crimes for which he was convicted. There is no dispute that Sustaire's acts were unauthorized. Thus, the threshold requirement for applying equitable estoppel against the government is not satisfied in this case.

## VI.

[7] Petitioner also requests remand to the BIA so she may thereby file a second motion to reopen. A motion to reopen must, among other things, state the new facts to be considered at the reopened hearing and be supported by affidavits or other evidentiary materials demonstrating *prima facie* eligibility for the relief sought. 8 C.F.R. § 1003.2(c)(1). The BIA denied petitioner's initial request for reopening to apply for adjustment of status because she failed to submit a copy of an approved I-140 Form (a petition to adjust her status to an alien worker) or other documentation which would satisfy the

regulatory requirements under 8 C.F.R. § 1003.2(c)(1). Although petitioner contends she has filed an I-140 Form, as was the case before, she did not include any documentation to show her application has been approved. Aliens who seek to remand or reopen proceedings to pursue relief bear a "heavy burden" of proving that, if proceedings were reopened, the new evidence would likely change the result in the case. *Matter of Coelho*, 20 I. & N. Dec. 464, 473 (BIA 1992). Petitioner has not met this burden because she has failed to cure the defects that led to her motion to reopen being denied in the first place.

[8] Further, aliens are entitled to file only one motion to reopen. *See* 8 C.F.R. § 1003.2(c)(2) (providing that a party may file only one motion to reopen proceedings and that motion must be filed within 90 days after the date on which a final administrative decision was filed). Petitioner is now barred from filing a second motion to reopen. *Id.* Accordingly, petitioner's motion to remand to file a second motion to reopen is denied.

**DENIED.**